**Abraham SCHERR et al., Plaintiffs, in their own behalf and on behalf of all persons similarly situated,**

v.

**John VOLPE, individually and as Secretary of Transportation of the United States, Washington, D. C., et al., Defendants.**

No. 71–C–347.

United States District Court,
W. D. Wisconsin.

Dec. 7, 1971.

Frederick H. Miller, Madison, Wis., for plaintiffs.

Richard E. Barrett, E. Gordon Young, Asst. Attys. Gen., John O. Olson, U. S. Atty., James R. Mack, Asst. U. S. Atty., Madison, Wis., for defendants.

## OPINION AND TEMPORARY RE-STRAINING ORDER

JAMES E. DOYLE, District Judge.

Plaintiffs have moved for a preliminary injunction in the above entitled action to enjoin defendants from engaging in any and all further construction or development of the State Highway 16 construction project at or near Hartland, Wisconsin, to run from Oconomowoc to Pewaukee, Wisconsin, including any alteration of the natural habitat of said area; and specifically to enjoin them from constructing or excavating in the area for said project until a final determination of this action.

## FACTS

For the purpose of the motion for a preliminary injunction, and only for such purpose, I find as fact the propositions stated in this section of this opinion. These findings are based on the record to date.

Plaintiffs are residents of the Village of Hartland, Wisconsin, and are members of various conservation and environmental organizations whose concern it is to conserve the material resources, aesthetic qualities and recreational values of areas such as the Lake Kettle Moraine area, in which the disputed highway is situated.

The present Highway 16 is to be converted from a 2-lane conventional highway to a 4-lane freeway over a length of approximately 12 miles. This portion of the state trunk highway system has been determined to be presently inadequate and deficient in providing safe and reasonable operating service to the motorists of southeastern Wisconsin. The project requires the acquisition of additional right of way throughout to provide for adequate width, frontage road and interchange construction. The project is part of a federal-aid highway program and is jointly financed and supervised by the Federal Highway Administration and the State of Wisconsin.

The construction project is located in the Lake Kettle Moraine area which contains: eleven lakes; two major rivers and their watershed and flood plains; wetlands located just west of the Village of Pewaukee and in and around the county park at Forest and Grass Lakes; the Kettle Moraine forests and other woodlands; wildlife habitats; ice age geological formations and rough topography unique to the Kettle Moraine area.

The immediate effects of the construction now in progress include damage to present natural habitats of various wild animals; stripping of forested land with attendant erosion problems; increased levels of noise, air and water pollution; impingement upon the aesthetic natural beauty and recreational value of the area.

An environmental impact statement (of the kind described in 42 U.S.C. § 4332(2) (C)) has not been filed by the Federal Highway Administration.

## OPINION

Jurisdiction is present. 28 U.S.C. § 1331, 5 U.S.C. §§ 701–706.

Plaintiffs contend that the federal defendant Volpe and his federal subordinate officials failed to comply with the requirements of the National Environmental Policy Act of 1969, 42 U.S.C. § 4332(2) (C) (hereinafter NEPA) in connection with the highway project.

■ Plaintiffs have standing to sue. Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Scenic Hudson Preservation Conference v. Federal Power Commission, 354 F.2d 608, 616 (2d Cir. 1965). I find that a real controversy exists between the plaintiffs and defendant in this action and that the aesthetic, conservation and recreational interests asserted by plaintiffs lie "arguably within the zone of interests to be protected or regulated by the statute . . ."[1] See *Data Processing, supra,* 397 U.S. at 153, 90 S.Ct. at 830, 25 L.Ed.2d 184.

■ Since 42 U.S.C. § 4332 does not expressly provide for judicial review of agency actions, I must look to the Administrative Procedure Act, 5 U.S.C. 701–706. [Hereinafter "APA"] The APA grants standing to a person "ag-

---

1. 42 U.S.C. § 4321, Congressional declaration of purpose of NEPA states as follows: "The purposes of this chapter are: To declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the Nation; and to establish a Council on Environmental Quality."

grieved by agency action within the meaning of a relevant statute . . . " 5 U.S.C. § 702. That interest may at times reflect "aesthetic, conservational, and recreational" as well as economic values. *Data Processing, supra,* 397 U.S. at 154, 90 S.Ct. at 830 (citing Scenic Hudson Preservation Conf. v. F. P. C., 354 F.2d 608, 616; Office of Communication of United Church of Christ v. F. C. C., 123 U.S.App.D.C. 328, 334–340, 359 F.2d 994, 1000–1006).

██ The amount in controversy is alleged to exceed $10,000, exclusive of costs and interest. In injunctive actions, the amount in controversy is not the amount that the plaintiffs might recover at law, but the value of the right to be protected or the extent of the injury to be prevented. 1 Barron & Holtzoff, Federal Practice and Procedure (Wright ed.), § 24 n. 54. Absolute certainty as to amount is not essential. I find that there is a present probability that the value of the matter in controversy will exceed the jurisdictional amount. 1 Barron & Holtzoff, Federal Practice and Procedure (Wright ed.), § 24, n. 50.4.

Section 4332(2) (C) provides as follows:

"(2) all agencies of the Federal Government shall—

(c) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of longterm productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented."

The basic issue presented is whether the Federal Highway Commission was required to file an impact statement under 42 U.S.C. § 4332(2) (C); that is, whether the project is a "major Federal action significantly affecting the quality of the human environment."

As evidence of a reasonable interpretation of 42 U.S.C. § 4332(2) (C), NEPA, I turn to the U. S. Department of Transportation, Federal Highway Administration Policy and Procedure Memorandum [hereinafter "P.P.M. 90–1"] dated August 24, 1971.[2]

Appendix F of P.P.M. 90–1, which deals with "Evaluating Highway Section Environmental Effects", states as follows:

"1. Draft and final environmental statements should be prepared and processed in accordance with the procedures required by this memorandum for all highway sections falling under one or

2. NEPA became effective on January 1, 1970. The design hearing for the Highway 16 project was held on June 30, 1970. Final federal approval of the design came on January 26, 1971. Although P.P.M. 90–1 was not transmitted to federal agencies until August 24, 1971, I find that it is nevertheless a reasonable administrative interpretation of the statutory language in question. Although its exact terms were not available to defendants at the time of their decision, I do regard it as a coherent statement of what a reasonable interpretation of that statute was at the time defendant determined that the Highway 16 project was not a "major Federal action significantly affecting the quality of the human environment".

more of the following three categories:

\* \* \* \* \* \*

c. Highway sections which are classed as *major actions* and are also *likely to significantly affect the quality of the human environment*. This category requires a two-step analysis. First, it must be determined if the proposed highway section is a *major* action (paragraph 2 of this Appendix); secondly, the significance of the effects upon the human environment must be determined (paragraph 3 of the Appendix)." (emphasis in original).

Paragraph 2 of Appendix F of P.P.M. 90–1, states as follows:

"2. The following should be used to determine whether a proposal to construct or improve a highway section is a major action.

\* \* \* \* \* \*

b. Major up-grading of an existing highway section resulting in a functional characteristic change (e. g., a local road becoming an arterial highway). Such changes usually result by adding lanes, interchanges, access control, medians, etc., and require extensive right-of-way acquisition and construction (grading, base, paving, bridges, etc.) which have the potential of significantly affecting the human environment."

 I conclude that plaintiffs have a reasonably good chance of ultimate success on the merits of their contention that defendants failed to comply with the mandate of 42 U.S.C. § 4332(2) (C).

I have found as facts for purpose of this motion for a preliminary injunction that certain effects will flow from the immediate reconstruction of Highway 16. (See section entitled "Facts", *supra*.) I find now for purposes of this motion that these effects will injure the "aesthetic, conservational and recreational" interests asserted by plaintiffs,

if construction work is allowed to continue, and that such injury is substantial. I find further that the continuing construction work by defendants and those working in concert with them, if allowed to continue, will make it impossible to restore the area in question to its previous environmental status. Thus, plaintiffs' rights would be sacrificed before a complete hearing and determination on the merits of their contention. The purpose of granting the preliminary injunction is to preserve the subject matter of this controversy in its existing condition.

Accordingly, for the reasons stated above and on the basis of the entire record herein, defendants, their officers, employees, agents, servants and all other persons in concert or co-operation with them or at their direction, are hereby restrained and enjoined until further order of the court from engaging in any and all further construction or development of the Highway 16 construction project at or near Hartland, Wisconsin; and specifically from constructing or excavating in the area for said highway construction project.