**The SANSOM COMMITTEE et al.**

**v.**

**James LYNN, Individually and as Secretary, Department of Housing and Urban Development, Washington, D. C., et al.**

**No. 73–1444.**

United States District Court,
E. D. Pennsylvania.

Oct. 31, 1973.

---

Robert J. Sugarman, Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiffs.

Robert E. J. Curran, U. S. Atty., Walter Batty, Asst. U. S. Atty., Philadelphia, Pa., for HUD.

James D. Crawford, C. David Rosenbloom, Redevelopment Authority, Philadelphia, Pa., for Philadelphia Redevelopment Authority.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The present case is a class action by residents and users of a block in Western Philadelphia to stop the Philadelphia Redevelopment Authority (RA) and the Federal Department of Housing and Urban Development (HUD) from carrying out a plan to construct an eleven story office building in their midst. The construction of the building, originally planned to house administrative offices for the University of Pennsylvania but now slated for commercial use, would entail the demolition of many, but not all, of the existing homes and small businesses. The block in question is surrounded by the University, and constitutes one of the few areas in the immediate locality which has not been redeveloped. Most of the structures on the block are owned by the Redevelopment Authority pursuant to an earlier condemnation. Plaintiffs see their block as a refuge of social and cultural diversity in the midst of a sterile homogeneity of massive institutional buildings.

Plaintiffs have alleged that defendants violated the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. ("NEPA") and the National Housing Act, 42 U.S.C. § 1441 et seq. in approving the modification of the original plan to allow the office building to be used for commercial purposes. Plaintiffs contend that defendants' approval of this modification, known as Fox and Posel Plan Two, was illegal because defendants failed to first follow certain procedures required by NEPA and the Housing Act. Defendants now move to dismiss plaintiffs' claims on the grounds that plaintiffs have failed to state a claim for which relief can be granted, that they lack standing, that they have failed to join the University of Pennsylvania, an indispensible party, and, finally, that this Court lacks subject matter jurisdiction over the action.

I. PLAINTIFFS' CLAIM THAT DEFENDANTS HAVE VIOLATED THE NATIONAL ENVIRONMENTAL POLICY ACT

The National Environmental Policy Act, 42 U.S.C. § 4321 et seq., was enacted by Congress to insure that federal administrative agencies would take into account the environmental consequences of their projects before they decided to undertake them. In order to insure that environmental factors would be taken into consideration, and to allow for public participation in their consid-

eration, NEPA establishes certain procedures which a federal agency must follow before approving certain projects. 42 U.S.C. § 4322(2)(c). These procedures include the preparation of a draft analysis of the proposed project's impact on the environment, the submission of this draft to the public for comments, and the preparation of a final "environmental impact statement" which must deal with all public comments. Plaintiffs here allege that defendant HUD has failed to follow these procedures, and pray that HUD and RA be enjoined from putting Fox and Posel Plan Two into effect until these procedures are complied with.

Not every act by a federal agency requires the preparation of an environmental impact statement. Only those actions which are "major" and which "substantially affect the quality of the human environment" qualify for this treatment. Plaintiffs have claimed that HUD's approval of Fox and Posel Plan Two was a major federal action, and that the Plan, if effectuated, would have substantial effects on the surrounding environment.

It has repeatedly been held that Congress did not intend NEPA to be "retroactive", ie, that it was to apply only to major federal actions taken after January 1, 1970, the effective date of the Act. Concerned Citizens of Marlboro v. Volpe, 459 F.2d 332 (3rd Cir. 1972); Pennsylvania Environmental Council, Inc. v. Bartlett, 454 F.2d 613 (3rd Cir. 1971). However, plaintiffs have alleged that the federal action that they claim triggered the Act's procedural requirements occurred on May 24, 1973, *after* the effective date of NEPA.

Plaintiffs have stated all the elements necessary for a complaint based upon NEPA. Defendants have offered page after page of argument that Fox and Posel Plan Two is not a major federal action significantly affecting the environment and that all the major federal decisions concerning the urban renewal project which includes the Sansom Street block were made before 1970. For the purposes of deciding whether plaintiffs have stated a valid claim, plaintiffs' allegations must be taken as true. Gardner v. Toilet Goods Association, 387 U.S. 167, 87 S.Ct. 1526, 18 L. Ed.2d 704 (1967). Defendants would be better advised to reserve their arguments for a motion for summary judgment or for the final hearing itself, but these arguments are clearly inappropriate in connection with a motion to dismiss. Defendants' motion to dismiss plaintiffs' claim based upon NEPA will therefore be denied.

## II. PLAINTIFFS' HOUSING ACT CLAIMS

(a) Plaintiffs' claim that defendants failed to "Maximize Housing."

Plaintiffs contend that defendants, in approving Fox and Posel Plan Two, did not act "so as to maximize housing," in violation of 42 U.S.C. § 1441. That section, the preface to the Housing Act of 1949, does not set forth maximization of housing as a goal; instead, it states:

"The Congress declares that the general welfare and security of the Nation and the health and living standards of its people require housing production and related community development sufficient to remedy the serious housing shortage, the elimination of substandard and other inadequate housing through the clearance of slums and blighted areas, and the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family. . . ."

Plaintiffs state in their Memorandum of Opposition to Defendant RA's Motion to Dismiss that they were attempting to paraphrase this language with "maximize housing." The Court is willing to interpret plaintiffs' claim as a claim based on the above quoted excerpt from the statute.

In support of the validity of this claim, plaintiffs cite Shannon v. HUD

**1276**

.436 F.2d 809 (3rd Cir. 1970), reversing 305 F.Supp. 205 (E.D.Pa.). Plaintiffs tell us that both the District Court and the Appellate Court opinions hold that "HUD *decisions* approving changes in plans are reviewable to insure conformity to the statute and guidelines." While this may be a correct general summary of the opinions, we do not believe that either Court held that a claim could be made out against HUD for violating the prefatory language of § 1441a. Both *Shannon* opinions deal with the question of whether HUD's *procedures* for approving a project conform to "procedures inferable from the congressional scheme." (305 F.Supp. at 211). In other words, both *Shannon* opinions involved HUD procedures which deviated from the procedures which it was claimed the Housing statute required HUD to follow. In the present case, however, plaintiffs claim that HUD's decision violated the statute. *Shannon*, therefore, gives plaintiffs no comfort, and their claim based on § 1441a will therefore be dismissed.

    (b) Plaintiffs claim that defendants failed to preserve rehabilitable structures.

Section 307 of the Housing Act, 42 U. S.C. § 1460(c) provides:

"... no contract shall be entered into for any loan or capital grant under this subchapter for any project which provides for demolition and removal of buildings and improvements unless the Secretary determines that the objectives of the urban renewal plan could not be achieved through rehabilitation of the project area. . . ."

This determination has already been made by HUD with respect to the Sansom Street block. A similar determination was not made for Fox and Posel Plan Two, but plaintiffs have failed to allege that any such determination was required. The HUD Handbook sets forth conditions which must be met before an area can be demolished rather than rehabilitated;[1] Plaintiffs have failed to allege that the plan for Project I as modified by Fox and Posel Plan Two changed either of these conditions so as to require a new § 307 "rehability" determination.

Plaintiffs buttress their claim that a fresh § 307 determination is mandated by referring to NEPA. Although plaintiffs do not cite a specific section of that Act in support of their argument, they presumably refer to section 102(a), which directs that laws and regulations are to be enforced in accordance with NEPA policies "to the fullest extent possible." Plaintiffs' claim is that NEPA requires HUD to make a fresh § 307 determination before approval of Fox and Posel Plan Two, on account of the Plan's environmental implications. We will not dismiss this claim at this stage; rather we prefer to wait until the scope of the Plan's environmental effect is detailed, either at the final hearing or upon a motion for summary judgment.

    (c) Plaintiffs' claim that defendants failed to prevent an unlawful condemnation.

This is a very interesting claim. It is based on the theory that the Housing Act requires that an area be "blighted" to qualify for renewal, and that in permitting defendant RA to condemn land that was not blighted, defendant HUD violated the statute. The assertion that the statute requires an area to be blighted before federally aided urban renewal can begin flies in the face of the statute, which states, *inter alia:*

"'Urban renewal project' or 'project' *may* include undertakings and activities of a local public agency in an urban renewal area for the elimination *and for the prevention* of the development of slums and blight. . . ."

The statute defines an urban renewal area as:

"... a slum area or a blighted, *deteriorated,* or *deteriorating area*

---

1. HUD Handbook RHA 7207.1, Chapter I.

in the locality involved which the Secretary approves as appropriate for an urban renewal project."

The above quoted excerpts make it clear that blight is but one of the permissible targets for federally funded urban renewal. Plaintiffs have not cited any HUD regulations requiring that a determination of blight must be made before a project can progress, and in lieu thereof the statute will not support the claim that defendants acted illegally in either not finding blight or unreasonably finding blight. Plaintiffs' claim will therefore be dismissed.

    (d) Plaintiffs claim that defendants failed to prevent illegal profit-making.

Plaintiffs have claimed that the University of Pennsylvania has speculated in the land involved in this suit, and that in failing to prevent it from doing so, defendants RA and HUD breached 42 U.S.C. § 1456(c)(7), which states:

"No provision of this subchapter shall be construed or administered to permit speculation in land holding. . . ."

▪▪▪ Plaintiffs lack standing to bring this claim. Unlike their claim that defendants have violated NEPA or the public hearings requirement of the Housing Act, plaintiffs would not be injured by any speculation on the part of the University, nor would they gain should the alleged profit be recaptured by HUD and RA. Simply put, it is not plaintiffs' money that is at stake; it is the money of every taxpayer, and a taxpayer *qua* taxpayer has no standing to sue unless the program he attacks violates some specific constitutional prohibition. Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923); Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

    (e) Plaintiffs claim that defendants have prevented citizen participation in the University City 4 Project.

▪▪ There is no statutory mandate that HUD provide for citizen participation in Neighborhood Development Programs, of which the Sansom block is a part, but the HUD NDP Handbook, RHA 7387.1, Chapter 1(c) seems to require that a Project Action Committee be established for all NDP applications approved after October 13, 1970. Plaintiffs have alleged that applications for continued funding of the University City 4 Project (of which the Sansom Street block is a part) was such an application. They therefore state a valid claim; the Court will not decide upon a Motion to Dismiss whether in fact Fox and Posel Plan Two falls within the confines of the NDP Handbook's requirements.

    (f) Plaintiffs claim that defendants illegally failed to hold a public hearing and seek local governing body approval.

▪▪▪ Section 105(d) of the Housing Act, 42 U.S.C. § 1455(d), requires that a public hearing must be held before a local public agency can acquire land for a federally assisted project. Section 501(b) of the Act, 42 U.S.C. § 1469(c)(1), requires local governing approval of any application for federal assistance before such application can be acted upon. The HUD Handbook makes these requirements applicable to amendments to projects which have already been approved, as long as these amendments "substantially affect the degree to which a basic objective will be achieved." HUD Handbook, RHA 7207.1, Chapter 4, Section 3, as amended. HUD has determined that Fox and Posel Plan Two does not significantly affect the original Plan's basic objectives so as to require a public hearing or local governing body approval. Such a determination by HUD is reviewable by the Court to determine whether HUD's decision was unreasonable, arbitrary, or an abuse of discretion. Shannon v. HUD, 305 F. Supp. 205 (E.D.Pa.), reversed on other grounds, 436 F.2d 809 (3rd Cir. 1970). Plaintiffs claim that HUD was unreasonable in determining that hearings

were not required; they have thus stated a judicially cognizable claim.

    (g) Plaintiffs claim that defendants failed to insure conformity of the Project to the Community and Regional Plans, that defendants permitted acceptance of non-public contributions, and that defendants failed to provide adequate relocation.

Plaintiffs have based their claims on 42 U.S.C. § 1441 et seq. Defendants have not mentioned these claims in their motion to dismiss. The claims will therefore stand.

    (h) Plaintiffs claim that defendants failed to follow required procedures for amendments.

Plaintiffs' complaint does not state that HUD or RA failed to follow required procedures in approving Fox and Posel Plan Two. Plaintiffs' Opposition Brief to defendants' Motion to Dismiss states that the complaint "inadvertently" omitted to allege this violation, but asserts that the complaint sets forth, in its discussion of the other claims, the facts and the law upon which the claim is based.

    The Court is faced here with a literal failure to state a claim. It would be unfair to defendants to make them infer all claims that could possibly arise from the law or facts set forth in the complaint. The proper means of raising claims that have inadvertently not been raised in the complaint is an amended complaint, not a brief in opposition to a motion to dismiss. Plaintiffs' claim will therefore be dismissed.

    (i) Plaintiffs claim that defendants have failed to expedite the completion of the Project.

Plaintiffs have not cited any statute or decision which imposes a duty upon defendants to expeditiously complete an urban renewal project, nor has the Court found any. Plaintiffs' claim will, therefore, be dismissed.

## III. SUBJECT–MATTER JURISDICTION

Plaintiffs state that this Court has subject-matter jurisdiction over their claims by reason of 28 U.S.C. § 1331 ("federal question" jurisdiction), § 28 U.S.C. § 1361 (mandamus jurisdiction), and 5 U.S.C. § 701 et seq. (Administrative Procedure Act).

    (a) Federal Question Jurisdiction.

    Defendants challenge plaintiffs' reliance on § 1331 as a grounds for jurisdiction, declaring that plaintiffs have failed to meet that statute's $10,000 amount in controversy requirement. Ordinarily the amount the plaintiff pled in his complaint controls. Citizens for Clean Air, Inc. v. Corps of Engineers, 349 F.Supp. 696 (S.D.N.Y. 1972). To this general principle is added the consideration that the injuries plaintiffs have claimed are predominantly injuries to their social, cultural, and environmental surroundings. (Although the injuries claimed from defendants' violations of the Housing Act center upon the threat that plaintiffs' homes will be demolished, plaintiffs have also declared that defendants' alleged violations of the Housing Act will deprive them of their present social and cultural environment). Faced with such injuries, whose economic value is often hard to measure, the Court is reluctant to find that plaintiffs have not met the jurisdictional amount. Sierra Club v. Mason, 351 F. Supp. 419 (D.Conn.1972); Scherr v. Volpe, 336 F.Supp. 882 (W.D.Wis.1971).

Defendants cite numerous cases for the proposition that plaintiffs in a class action cannot aggregate their claims for the purposes of meeting the jurisdictional amount. However, plaintiffs have not attempted to aggregate their injuries in the complaint, so that defendants' arguments are irrelevant. We construe plaintiffs' complaint to allege that each and every member of the class has suffered damages in excess of $10,000, and we accept this contention, at this stage, as true.

    (b) Mandamus Jurisdiction.

Jurisdiction under § 1361 is proper when the administrative action sought to be compelled—or restrained— is essentially ministerial rather than discretionary. In other words, if the action is clearly compelled by law, rather than being mandated by broad, general statutory language which, in effect, leaves the action within the agency's discretion, then such action can be mandamused. United States v. Walker, 409 F. 2d 477 (9th Cir. 1969). The classic example of actions for which mandamus is proper are procedures which· an agency must follow before it can approve or participate in certain projects. The procedures surrounding the preparation of a NEPA environmental impact statement have been held to be agency action which can be mandamused by the Courts under 28 U.S.C. § 1361. Harrisburg Coalition Against Ruining Environment v. Volpe, 330 F.Supp. 918 (M.D.Pa.1971). An agency is compelled to follow these procedures whenever it contemplates approving a "major federal action" which will "significantly affect the quality of the human environment." The decision as to which projects fall within the statutes is not left to the agency's discretion, but is rather a question of law for the Courts to decide. Scherr v. Volpe, 336 F.Supp. 882 (W.D.Wis.1971). Similarly, the Housing Act's requirements of a public hearing and local governing body approval, as implemented by HUD's regulations, are procedures which can be compelled by the Court under § 1361. Coalition for United Community Action v. Romney, 316 F.Supp. 742 (N.D.Ill.1970).

(c) Administrative Procedure Act.

Defendants urge that the Third Circuit does not recognize the Administrative Procedure Act, 5 U.S.C. §§ 701, 706, as independently granting jurisdiction to a Federal Court. This appears to be a correct statement of the law. Richardson v. United States, 465 F.2d 844 (3rd Cir. 1972), en banc, cert. granted, 410 U.S. 953, 93 S.Ct. 1420, 35 L.Ed.2d 686 (1973); Zimmerman v. United States, 422 F.2d 326 (3rd Cir. 1970), cert. denied, 399 U.S. 911, 90 S.Ct. 2200, 26 L. Ed.2d 565 (1970), reh. denied, 400 U.S. 855, 91 S.Ct. 26, 27 L.Ed.2d 93 (1970).

In *Zimmerman*, the Court, citing an earlier case, declared:

" . . . There continues to be a dispute in the courts and in academic circles as to whether the Administrative Procedure Act is jurisdictional, i. e. whether the Act itself is an affirmative grant of jurisdiction to the district courts to review agency action according to its terms absent any other basis for jurisdiction. [citation omitted]. In an earlier case, however, this court characterized the A.P.A. as being 'clearly remedial and not jurisdictional' and stated that there is nothing in . . . the Act which extends the jurisdiction of either the district courts or the appellate courts to cases not otherwise within their competence." 422 F.2d at 330.

According to this view, the A.P.A. is analogous to 28 U.S.C. § 1983, which states a federal cause of action but does not independently confer jurisdiction in the federal courts.

However, plaintiffs contend that this line of cases has been overruled *sub silentio* by Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The Court in that case held that the Secretary of Transportation's determination that there was no feasible alternative to building a highway through a park was subject to judicial review under the A. P.A. Although the Court did not explicitly declare that the A.P.A. granted jurisdiction, no other basis for federal jurisdiction was given. In further support of plaintiffs' argument, the District Court opinion in *Overton* cites the A.P. A. (specifically, § 706) as the jurisdictional foundation for plaintiff's claim. 309 F.Supp. 1189, at 1193.

This Court believes that *Overton* at least sheds doubt on the continued validity of *Zimmerman*, cited *supra*. But it is not necessary to resolve this question, because plaintiffs' claims discussed

**1280**

above can rest on 28 U.S.C. §§ 1331 and 1361, and need not depend upon the unsure footing of the A.P.A.

(d) Pendant Jurisdiction.

This Court may assert jurisdiction over all plaintiffs' claims based on state law arising out of the same set of operative facts as their federal claims. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Plaintiffs have alleged that defendant RA, in undertaking the same actions attacked as illegal under federal law, violated the Pennsylvania State Constitution, Article 1, Section 27,[2] and Pennsylvania's Urban Redevelopment Law, 35 P.S. § 1701.[3] This Court could, therefore, accept jurisdiction over these claims. But the exercise of this jurisdiction is discretionary with the Court, and should not be exercised if state decisions provide inadequate guidance in interpreting state law. As the Supreme Court pointed out in *Gibbs*:

"Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, *by procuring for them a surer-footed reading of applicable law.*" 383 U.S. at 726, 86 S.Ct. at 1139.

Defendants advance two reasons why we should decline to exercise jurisdiction over plaintiffs' state claims. First, as to plaintiffs' constitutional claim, it is pointed out that Section 27 was ratified in 1971, and that there have been few state cases interpreting it. Second, as to plaintiffs' claim based on the state Urban Redevelopment Act, it is observed that there is pending in the state courts a suit based on an identical claim, in which one of the plaintiffs in the present suit is also a plaintiff. The Court accepts defendant RA's argument that to accept jurisdiction over plaintiffs' state claims in light of these facts would breach accepted norms of comity between the state and federal systems.

## IV. STANDING

Plaintiffs' Complaint identifies the right which defendants threaten as "the enjoyment of the existing environment" and assert that all plaintiffs will be denied that right should defendants be allowed to proceed. (¶ 5). The Complaint asserts that individual plaintiffs live in and/or use the threatened area. These assertions are enough to make out standing under the authoritative cases of Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and the companion cases of Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 25 L.Ed.2d 184, 90 S.Ct. 827 (1970), and Barlow v. Collins, 397 U.S. 159, 25 L.Ed.2d 192, 90 S.Ct. 832 (1970). Aesthetic, recreational and conservationist values have been recognized as falling within the zone of protected interests of both NEPA and the National Housing Act. Plaintiffs have shown that they themselves will suffer injury-in-fact; they therefore have standing to prosecute this action.

## V. LACK OF INDISPENSIBLE PARTY

Defendants contend that the University of Pennsylvania is an indispensible party to this action, and that rather than allowing plaintiffs to join it at this stage, plaintiffs' case should be dismissed. The University of Pennsylvania undeniably has an interest in the outcome of this litigation; if plaintiffs

---

2. Article 1, Section 27 states:
    "The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic, and aesthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall con- serve and maintain them for the benefit of all the people."

3. Unlike the Federal Housing statute, the state Urban Redevelopment Law does require a determination of blight before urban redevelopment can begin. Plaintiffs here attack defendant RA's blight determination as illegal.

are granted the injunction they request, the University could not demolish buildings which it owns on the Sansom-Walnut block. However, many cases have held that where, as here, public rights are sought to be vindicated even if a third party will suffer from a decision adverse to the defendant, that third party is not converted by this fact alone into an indispensible party. National Licorice Co. v. N. L. R. B., 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1970); Natural Resources Defense Council v. Tennessee Valley Authority, 340 F.Supp. 400 (S.D.N.Y.) reversed on other grounds, 459 F.2d 255 (2d Cir. 1971).

### ORDER

And now, to wit, this 31st day of October, 1973, the motion of defendants in the above captioned matter under Rule 12(b)(6) to dismiss plaintiffs' claims that defendants violated the National Housing Act, § 42 U.S.C. § 1441 et seq. by:

  i. failing to maximize housing;

  ii. failing to prevent an unlawful condemnation;

  iii. failing to prevent illegal profit-making;

  iv. failing to follow required procedures for amendments;

  v. failing to expedite the completion of the project;

is hereby GRANTED. Defendants' motion to dismiss plaintiffs' claims based on state law and the state Constitution is also hereby GRANTED.

Defendants' motion to dismiss plaintiffs' claims that defendants:

  i. violated the National Environmental Policy Act by failing to issue an environmental impact statement and by failing to hold a fresh hearing on whether the area in question should be rehabilitated rather than demolished;

  ii. violated the Housing Act by failing to provide citizen participation in the Sansom block redevelopment project;

  iii. violated the Housing Act by failing to hold public hearings and seek local governing body approval for the project;

  iv. violated the Housing Act by failing to insure conformity of the project to community and regional plans;

  v. violated the Housing Act by permitting acceptance of non-public contributions to the project;

  vi. violated the Housing Act by failing to provide adequate relocation;

is hereby DENIED.

It is so ordered.