**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-1656 & 20-1657
_____

KYLE HAMER,

Appellant

v.

LIVANOVA DEUTSCHLAND GMBH, FKA Sorin
Group Deutschland GMBH; LIVANOVA HOLDING USA,
Inc. FKA Sorin Group USA, Inc.

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action Nos. 1-18-cv-01645 and
1-18-md-02816)
District Judge: Honorable John E. Jones, III

Argued on November 18, 2020

Before:  AMBRO, BIBAS and ROTH, <u>Circuit Judges</u>

(Opinion filed: April 9, 2021)

Lawrence J. Centola, III     (**ARGUED**)
Jason Z. Landry
Martzell Thomas & Bickford
338 Lafayette Street
New Orleans, LA 70130

                    Counsel for Appellant

Mark J. Winebrenner                (**ARGUED**)
Faegre Drinker Biddle & Reath
90 South Seventh Street
2200 Wells Fargo Center
Minneapolis, MN 55402

Jared B. Briant
Faegre Drinker Biddle & Reath
1144 15th Street, Suite 3400
Denver, CO 80202

Magda S. Patitsas
Adam M. Shienvold
Eckert Seamans Cherin & Mellott
213 Market Street, 8th Floor
Harrisburg, PA 17101

                    Counsel for Appellee

## OPINION

**ROTH**, <u>Circuit Judge</u>:

Kyle Hamer appeals the order of the District Court for the Middle District of Pennsylvania, dismissing with prejudice his claims against Sorin Group, U.S.A., Inc., n/k/a LivaNova Holding U.S.A., Inc., in Multidistrict Litigation case number 2816 (MDL 2816), and denying as moot his motion to remand this case to the Eastern District of Louisiana. Hamer contends that the District Court abused its discretion by dismissing his case with prejudice solely for failure to comply with a specific diagnostic requirement set out by a case management order. We will reverse the dismissal order and remand this case to the District Court with instructions to forward it to the Judicial Panel on Multidistrict Litigation (JPML) for remand to the Eastern District of Louisiana.

## I.

### A. Background

On July 20, 2017, Hamer underwent open heart surgery at Children's Hospital-New Orleans, using LivaNova's 3T Heater-Cooler System. He subsequently developed an infection in the incision and returned to Children's Hospital on September 4. His physicians suspected that his infection stemmed from a non-tuberculosis mycobacterium (NTM), *Mycobacterium abscessus*. The hospital had experienced an

outbreak of NTM infections in other patients who had undergone surgery using the 3T System. Hamer was treated for a suspected infection from September 4 to 25. His treatment team never isolated NTM from any of the swabs or cultures. His physician informed him that the lack of a positive NTM culture did not mean that he hadn't had an NTM infection. Hamer now alleges that his treatment caused him lasting injuries, including potential long-term hearing loss.

## B. Procedural History

Hamer filed a complaint against LivaNova in the Eastern District of Louisiana on July 18, 2018, asserting claims under the Louisiana Products Liability Act (LPLA) for failure to warn and inadequate design, among other violations. He alleged that "after [his] open-heart surgery . . ., [he was] treated for *mycobacterium abscessus*," which led him to suffer damages.[1] The JPML transferred Hamer's case to MDL 2816 on August 17, 2018, along with other cases alleging damages from the NTM infection outbreak caused by the 3T System.[2]

### 1. CMO 15

On April 16, 2019, the District Court entered Case Management Order 15 (CMO 15) to manage the proceedings in remaining 3T cases that had not been settled pursuant to a Master Settlement Agreement. CMO 15 required plaintiffs to show, among other things, "proof of NTM infection" through

---

[1] Joint Appendix ("JA") 43–44.

[2] *See In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig. (No. II)*, 289 F. Supp. 3d 1335 (J.P.M.L. 2018) (selecting the Middle District of Pennsylvania as the transferee district).

4

"positive bacterial culture results showing infection with [an NTM] following surgery with a Sorin 3T."[3] It also required plaintiffs to produce expert reports, showing general and specific causation for their alleged injuries.

### 2.  Dismissal Pursuant to CMO 15

Hamer did not comply with CMO 15 in time. LivaNova filed a Motion for Issuance of a Rule to Show Cause, seeking dismissal of Hamer's claims for failure to comply with the order. As a result, the District Court entered an Order to Show Cause why Hamer's case should not be dismissed with prejudice for (1) failure to produce a positive bacterial culture result showing infection with NTM, (2) failure to produce a case-specific expert report concerning the causation of Hamer's alleged injury and alternative causation, and (3) failure to produce all relevant medical records.[4] Hamer opposed the order, claiming his complaint did not warrant dismissal because it stated a *prima facie* claim under Louisiana law. He filed a motion to remand his case to the Eastern District of Louisiana. On March 19, 2020, the court dismissed Hamer's claims with prejudice on the basis that Hamer lacked proof of an NTM infection and denied his motion to remand as

---

[3] Joint Appendix ("JA") 16. CMO 15 provided that plaintiffs who failed to meet the order's requirements would be served with an Order to Show Cause why their cases should not be dismissed. If plaintiffs failed to show cause within 21 days, their cases would be dismissed with prejudice.
[4] LivaNova does not dispute that Hamer provided medical records pursuant to CMO 15 and does not argue that his case should be dismissed for failure to produce medical records; rather, it argues that Hamer's records are deficient because they do not show proof of an NTM infection.

moot. In relevant part, its two-page opinion reads as follows:

> Hamer . . . argues that this matter should be remanded to the Eastern District of Louisiana for resolution of his claims on the basis that, although mycobacterium was never isolated from any of the swabs or cultures from his infection, his [wound] was suspicious for mycobacterial infection and was treated as such. On this basis, Hamer seems to believe he still [has] a claim to pursue against the Defendant.
>
> Unfortunately for Hamer, the language of CMO 15 is starkly clear and unavoidable—a plaintiff must have positive bacterial culture results showing infection with a non-tuberculosis mycobacteria [*sic*] following surgery with a Sorin 3T to proceed as a litigating Plaintiff in this multi-district litigation. Accordingly, because Plaintiff has acknowledged that he does not have proof of an NTM infection, he has failed to show cause pursuant to our December 19, 2020 Order why this matter should not be dismissed with prejudice.[5]

Hamer appealed the District Court's dismissal and its denial of his motion to remand.

## II.

We review involuntary dismissals under Rule 41(b) of

---

[5] JA 9–10 (internal quotation marks omitted).

the Federal Rules of Civil Procedure[6] for abuse of discretion.[7] While we take into account MDL judges' "increased burden" when applying the abuse of discretion standard, the fact that a proceeding occurred in a MDL setting "does not alter the substantive rights of the litigants."[8] Although we defer to the District Court's discretion, "dismissals with prejudice . . . are drastic sanctions,"[9] "only appropriate in limited circumstances[,] and doubts should be resolved in favor of reaching a decision on the merits."[10] We exercise plenary review over a district court's denial of a motion to remand.[11]

## III.

Hamer argues that the District Court abused its discretion by dismissing his claims with prejudice solely because he could not produce proof of a positive NTM culture. He claims that, by requiring all plaintiffs in MDL 2816 to show evidence of a specific infection, the District Court fashioned an *ad hoc* substantive criterion for participation in the MDL,

---

[6] District courts have authority under Rule 41(b) of the Federal Rules of Civil Procedure to dismiss claims with prejudice for failure to comply with a court order. The District Court's order did not state whether dismissal of Hamer's claims was pursuant to its authority under Rule 41(b), but both parties agree that the order was a Rule 41(b) dismissal. Therefore, we will proceed on that basis.

[7] *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002).

[8] *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 243 (3d Cir. 2013).

[9] *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867 (3d Cir. 1984).

[10] *Emerson*, 296 F.3d at 190 (citing *Adams v. Trs. of the N.J. Brewery Emps. Pension Tr. Fund*, 29 F.3d 863, 870 (3d Cir. 1994)).

[11] *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 199 (3d Cir. 2000) (citation omitted).

which should not have a basis for dismissing his claims with prejudice before considering whether meeting it was necessary to state a claim under Louisiana law. In other words, Hamer claims that the dismissal of his suit with prejudice hobbled his ability to proceed in *any* court under a theory of injury that, while perhaps too factually distinct from other 3T-related cases to remain in MDL 2816, may still state a *prima facie* claim against LivaNova. We agree and conclude that the District Court abused its discretion.

CMO 15 is an example of a *Lone Pine* order, by which trial courts require plaintiffs to produce threshold *prima facie* support for their claims, such as expert reports and medical records.[12] *Lone Pine* orders are routinely used by courts to streamline litigation in mass tort cases.[13] Hamer does not challenge the propriety of CMO 15 or *Lone Pine* orders generally and does not seek to modify CMO 15 as applied to all participants. Instead, he contends that the dismissal of his claims with prejudice for failure to have a positive result for NTM is beyond an MDL Court's authority under FRCP 41(b).

As an initial matter, we do not believe that the District Court abused its discretion by entering CMO 15 or by including among its provisions a requirement that plaintiffs produce a positive NTM culture. A district court,

---

[12] *See Lore v. Lone Pine Corp.*, 1986 WL 637507, at *4 (N.J. Super. Ct. Law Div. Nov. 18, 1986) (unpublished) (upholding case management order, finding that "prior to the institution of [a mass tort action], attorneys for plaintiffs must be prepared to substantiate, to a reasonable degree, the allegations of personal injury, property damage and proximate cause").

[13] *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008) (collecting cases).

administrating a multidistrict case, faces unique challenges not present when administrating cases on a routine docket.[14] As such, in the MDL context, we conclude that district courts must be granted significant latitude to manage their dockets and to mitigate "potential burdens on the defendants and court."[15] In an MDL case, management orders are essential tools in helping the court weed out non-meritorious or factually distinct claims. Accordingly, an MDL court "needs to have broad discretion to . . . keep[] the parts in line" by entering *Lone Pine* orders that "drive[] disposition on the merits."[16] Such orders may impose preliminary discovery requirements, like the production of relevant expert reports, or may require plaintiffs to furnish specific evidence like proof of a medical diagnosis, with the goal of winnowing non-compliant cases from the MDL. That said, "efficiency must not be achieved at the expense of preventing meritorious claims from going forward."[17]

Here, the District Court would have acted within its discretion if it had dismissed Hamer's claims without prejudice for failure to comply with CMO 15's NTM infection requirement, or if it had suggested remand to the transferor court. The court would even have been within its discretion to dismiss Hamer's claims *with* prejudice, provided that it properly found that Hamer had not stated a *prima facie* case for relief under Louisiana law.[18] But that is not what happened.

---

[14] *In re Asbestos (No. VI)*, 718 F.3d at 246 (citing *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1229 (9th Cir. 2006)).

[15] *Id.* (quoting *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340–41 (5th Cir. 2000)).

[16] *Id.* at 247 (quoting *In re PPA*, 460 F.3d at 1232).

[17] *Id.*

[18] *See, e.g.*, *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 699 (9th

9

The District Court dismissed Hamer's claims *with* prejudice and *without* any discussion of whether, in order to allege a redressable injury, the claims must be predicated on proof of an NTM infection. The court was well within its discretion to find that Hamer's claims may be too factually distinct to continue in MDL 2816. However, by dismissing his claims with prejudice, it deprived Hamer of the opportunity to litigate his claims in *any* venue without consideration of how they might fare outside the MDL context. More is required before a court should wholly extinguish a claim.[19]

Indeed, Hamer's case may have merit under Louisiana law. The infection may have been caused by another organism

---

Cir. 2011) (concluding that while MDL courts have jurisdiction over pre-trial proceedings including motions to dismiss, they are bound by the same substantive standards as the transferor court); David F. Herr, Multi-District Litig. Manual § 9:18 (2014) ("The Panel has recognized that the transferee court will be obligated to apply the law the transferor forum would apply."); *see generally Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

[19] LivaNova cites our decision in *In re Asbestos (No. VI)*, in which we upheld the dismissal of three plaintiffs in an MDL for failure to produce diagnostic information in response to a *Lone Pine* order, as support for affirming Hamer's dismissal. *See* 718 F.3d at 245–46. But *Asbestos' Lone Pine* finding is distinguishable. In that case, we affirmed the plaintiffs' dismissals only after the district court had analyzed whether the diagnostic requirement at issue was necessary to state a claim under the relevant state law. *See id.*; *see also In re Asbestos Prods. Liab. Litig. (No. VI)*, 278 F.R.D. 126, 133–35 (E.D. Pa. 2011). Further, the only *Asbestos* plaintiff to challenge his dismissal for failure to meet the CMO's diagnostic requirement argued merely that he did in fact meet the requirement, not that dismissal for failure to meet the requirement constituted legal error. *See* 718 F.3d at 245.

10

or a *Mycobacterium abscessus* infection may have been eradicated by immediate treatment before a culture was taken. In addition, Hamer complained of injuries arising from an overly-long course of antibiotics. [20]

These allegations may be sufficient to state a claim under the LPLA, which "establishes the exclusive theories of liability for manufacturers for damage caused by their products" in Louisiana.[21] A product is "unreasonably dangerous" under the LPLA if it is unreasonable in construction or design or because of an inadequate warning.[22] Here, Hamer alleges that older versions of the Sorin 3T suffered from design defects that made them unreasonably dangerous and that newer models accommodated a safer disinfection system that was not used in Hamer's surgery. Under the LPLA, these facts might state a *prima facie* case for defective design.[23]

---

[20] LivaNova argues that Hamer pleaded injury in the form of a *Mycobacterium abscessus* infection in his Plaintiff Fact Sheet, in which he was asked to identify the pathogen that "caused the infection that is the subject of this lawsuit." We are unconvinced. Such an open-ended question does not foreclose Hamer's theory that his damages were caused by the hospital's outbreak of, and Hamer's subsequent treatment for, *Mycobacterium abscessus*. And, in response to another query on his Plaintiff Fact Sheet, Hamer explained that his injuries stemmed from the reopening of his chest incision for treatment and the injection of oral antibiotics for a prolonged period.

[21] La. R.S. § 9:2800.52.

[22] La. R.S. §§ 9:2800.54–57.

[23] As LivaNova correctly points out, Hamer raised a number of novel theories in opposing the District Court's Order to Show Cause (and in his opening brief before this Court) that are absent from his complaint, including "fear of infection" and negligent infliction of

11

In sum, Hamer presents alternative and potentially redressable theories of injury against LivaNova. Hamer's allegations may diverge from those of other cases in MDL 2816 in which an NTM infection was verified. Nevertheless, stating alternative theories of liability cannot justify slamming the door on his claims. For this reason, we will reverse the District Court's order dismissing Hamer's claims with prejudice for failure to produce a positive NTM culture.[24] [25]

---

emotional distress. Because those claims were not raised in his complaint, we cannot consider them now as a basis for appeal. *See Sansom Comm. v. Lynn*, 366 F. Supp. 1271, 1278 (E.D. Pa. 1973) ("The proper means of raising claims that have inadvertently not been raised in the complaint is an amended complaint[.]").

[24] CMO 15 also required plaintiffs to furnish expert reports showing specific and general causation for their injuries. Although the District Court ordered Hamer to show cause why he had not produced an expert report on specific causation, it ultimately dismissed Hamer's claims based solely on his failure to meet the NTM culture requirement without discussing whether the specific causation report requirement had been met. Therefore, we express no opinion as to the adequacy of Hamer's expert discovery submission or whether the District Court would have erred by dismissing his claims for failure to comply with CMO 15's expert report requirement.

[25] District courts must ordinarily consider the six factors laid out by *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984), before dismissing a case by court order under Rule 41(b). *See United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 161–62 (3d Cir. 2003); *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008). The District Court was required to undertake at least some consideration of the *Poulis* factors before dismissing Hamer's claims, but did not do so. That, in addition to the reasons discussed, was an abuse of discretion. Since the District Court did not analyze the *Poulis* factors, we need not consider whether they

## IV.

Having determined that the District Court abused its discretion in dismissing Hamer's claims with prejudice, we turn to the question of remedy. Hamer wishes to continue litigating his claims, not in the Middle District of Pennsylvania as part of MDL 2816, but in the Eastern District of Louisiana, where the claims were first brought. At the time that the District Court issued its order to show cause why Hamer's case should not be dismissed, he filed a remand motion to this effect. The District Court denied this motion as moot after dismissing his claims with prejudice. On appeal, Hamer requests that we reverse the District Court's denial of his remand motion and order the District Court to suggest to the JPML that it accept the remand.

As we discuss in Part III, we will reverse. As for remand, the District Court did not get to Hamer's arguments in favor of remand because it had already dismissed his claims with prejudice for failure to comply with CMO 15. Now, however, remand is appropriate and the JPML is the proper destination for it to consider remand back to the Eastern District of Louisiana. Under 28 U.S.C. § 1407(a), the JPML has authority to remand a case that had been transferred into a consolidated proceeding "at or before the conclusion of . . . pretrial proceedings." Once an action has been transferred into an MDL, "a party seeking remand to the transferor court has the burden of establishing that such remand is warranted."[26]

---

support dismissal here. If Hamer's claims are again dismissed under Rule 41(b) on remand, fuller consideration of *Poulis* is needed.

[26] *In re Integrated Res., Inc. Real Est. Ltd. P'ship Sec. Litig.*, 851 F. Supp. 556, 562 (S.D.N.Y. 1994) (citing *In re Holiday Magic Sec. & Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977)).

13

The JPML has discretion to remand before pretrial proceedings have concluded when doing so "will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of [the litigation],"[27] or when "everything that remains to be done is case-specific."[28] "Generally, the decision to remand turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL,"[29] and remand is appropriate when the transferee court has determined that its "role in the case has ended."[30] An MDL court may not issue a remand directly,[31] but its suggestion to the JPML whether or not a case should be remanded is afforded "great weight."[32] The JPML is "reluctant to order a remand absent [a] suggestion of the transferee judge,"[33] but, even if the transferee court suggests remand, the JPML will only follow

---

[27] *In re Air Crash Disaster at Tenerife*, 461 F. Supp. 671, 672 (J.P.M.L. 1978)).

[28] *Id.*; *see also In re Wilson*, 451 F.3d 161, 172 (3d Cir. 2006) (noting that "when remand is sought *before* the conclusion of coordinated or consolidated pretrial proceedings, the JPML's authority is discretionary.")

[29] *In re Baycol Prods. Litig.*, 265 F.R.D. 453, 455 (D. Minn. 2008) (internal quotation marks omitted) (citing *Air Crash Disaster*, 461 F. Supp. at 672–73).

[30] *In re Integrated Res.*, 851 F. Supp. at 562 (citation omitted).

[31] *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 41 n.4 (1998) ("[W]e find that the statutory language of § 1407 precludes a transferee court from granting any 1404(a) motion . . .."); *Kalama v. Matson Nav. Co., Inc*., 875 F.3d 297, 308 (6th Cir. 2017) (finding that an MDL court's direct transfer to another district court would "thwart the JPML's ability to remand to the originating court[.]").

[32] *Patenaude*, 210 F.3d at 141.

[33] RULES OF PROC. OF THE U.S. JUD. PANEL ON MULTIDISTRICT LITIG., Rule 10.3(a).

its suggestion if good cause for remand is shown.[34]

The circumstances of Hamer's case indicate good cause for granting his request. CMO 15 was entered pursuant to the District Court's "inherent authority to manage" any remaining cases against LivaNova existing after "the [Master Settlement Agreement] entered after years of litigation."[35] The District Court was within its discretion to do so. Indeed, we agree that Hamer's case was ill-suited for continued consolidation: his alternate theories of liability raise questions of causation and injury not present where a plaintiff had a positive NTM culture.[36] When the District Court determined it could no longer efficiently administer Hamer's claims, it should have suggested to the JPML that the case be remanded in order to return it to Louisiana. For that reason, we will reverse the District Court's denial of Hamer's motion to remand and instruct the District Court to suggest to the JPML that it remand Hamer's case to the Eastern District of Louisiana.

## V.

For the foregoing reasons, we will reverse the judgment of the District Court and remand for further proceedings consistent with this opinion.

---

[34] *In re S. Cent. States Bakery Prods. Antitrust Litig.*, 462 F. Supp. 388, 390 (J.P.M.L. 1978) (citation omitted).
[35] JA 11.
[36] *See Wilson*, 451 F.3d at 170 ("[T]he test is not whether proceedings on issues common to all cases have concluded; it is whether the issues overlap[.]").