**600 GRANT STREET ASSOCIATES LIMITED PARTNERSHIP,**
Plaintiffs,

v.

**LEON–DIELMANN INVESTMENT PARTNERSHIP and W.V. Dielmann, III, Defendants.**

No. 87 Civ. 8995 (RWS).

United States District Court,
S.D. New York.

March 11, 1988.

Rogers & Wells, New York City, for plaintiffs; Jonathan M. Herman, of counsel.

Kostelanetz Ritholz Tigue & Fink, New York City, for defendants; David M. Kohane, of counsel.

## OPINION

SWEET, District Judge.

Defendants Leon–Dielmann Investment Partnership ("Leon–Dielmann") and W.V. Dielmann, III ("Dielmann") have moved for an order pursuant to Fed.R.Civ.P. 12(b)(2) dismissing the complaint for lack of personal jurisdiction or, in the alternative, for an order pursuant to 28 U.S.C. § 1404(a) transferring this case to the Western District of Texas. Upon the findings and conclusions set forth below, the motion is denied.

*Facts*

Plaintiff 600 Grant Street Associates Limited Partnership ("600 Grant Street") commenced this action in New York State Supreme Court on November 13, 1987 alleging that Leon–Dielmann had defaulted on its obligation to make payments pursuant to a negotiable promissory note ("Note") it had executed in connection with its purchase of a one-unit limited partnership interest in 600 Grant Street. Defend-

ants removed the action to this court on December 17, 1987, based on diversity of citizenship, and thereafter brought the instant motion.

600 Grant Street is one of several limited partnerships sponsored by Integrated Resources, Inc. ("Integrated") and is organized under the laws of the state of Connecticut. The general partner of 600 Grant is DCGP Associates Limited Partnership ("DCGP") which maintains its principal office in New York City. The selling agent of 600 Grant Street is Integrated Resources Equity Corporation ("IREC") which also maintains its principal office in New York City.

Leon–Dielmann is a partnership organized under the laws of the state of Texas with its principal place of business in San Antonio, Texas. It has two partners, Dielmann and Jack Paul Leon ("Leon"). Dielmann is a certified public accountant and an attorney who lives and works as a sole practitioner in San Antonio. Leon is an attorney who lives in San Antonio and practices with a law firm in that city.

In November 1984, a representative from IREC's San Antonio office met with Dielmann to discuss investment opportunities in a limited partnership, 600 Grant Street, that had been formed to acquire certain property rights in Pittsburgh, Pennsylvania. In connection with Leon–Dielmann's purchase of one limited partnership unit for the sum of $149,889, Dielmann executed on behalf of Leon–Dielmann a subscription agreement ("Subscription Agreement") and a limited partnership agreement ("Limited Partnership Agreement"). The Subscription Agreement was accepted by DCGP in New York on November 30, 1984. As partial payment for Leon–Dielmann's limited partnership interest, Dielmann also executed the Note together with a security agreement ("Security Agreement") which granted 600 Grant Street a security interest in Leon–Dielmann's partnership interest.

Upon becoming a limited partner in 600 Grant Street, Leon–Dielmann made nine quarterly payments under the Note. The complaint alleges that Leon–Dielmann failed to make the installment payment due June 30, 1987 and thereafter was in default on the Note. The complaint states that Leon–Dielmann's failure to cure its default caused all outstanding principal and interest under the Note to become immediately due and payable. Pursuant to its rights under the Security Agreement, 600 Grant Street thereafter foreclosed upon and resold Leon–Dielmann's limited partnership interest, leaving a deficiency of $40,106.61, which is the subject of this lawsuit.

Paragraph 7 of the Security Agreement provides in part:

[A]ny suit, action or proceeding with respect to this Agreement, the Notes, any amendments or any replacements hereof and thereof, and any transactions relating thereto may be brought in the state courts of, or the federal courts in, the State of New York, and Debtor [Leon–Dielmann] hereby irrevocably consents and submits to the jurisdiction of such courts for the purpose of any such suit, action or proceeding. Debtor agrees that service of process on Debtor in any such suit, action or proceeding may be made by registered or certified mail, postage prepaid to Debtor's address as set forth in the Partnership Agreement, or to such other address furnished by notice given in accordance with Paragraph 8 of this Agreement....

\*     \*     \*     \*     \*     \*

Debtor hereby waives, and agrees not to assert against the Secured Party (or any assignee thereof), by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, (a) any claim that it is not personally subject to the jurisdiction of the above-named courts or that its property is exempt or immune from set-off, execution or attachment, either prior to judgment or in aid of execution and, (b) to the extent permitted by applicable law, any claim that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper or that this Agreement, the Notes or any amendments or any replacements hereof or

thereof may not be enforced in or by such courts.

In addition, the Subscription Agreement, the Note and the Security Agreement contain similar choice of law clauses, as for example in paragraph 7 of the Subscription Agreement, that provide:

This Agreement, the Notes, any amendments or replacements hereof and thereof, and the legality, validity and performance of the terms hereof and thereof, shall be governed by and enforced, determined and construed in all respects in accordance with the internal laws of the State of New York (i.e., the laws other than those relating to conflict of laws rules) applicable to contracts, transactions and obligations entered into and to be performed in New York.

### The Motion to Dismiss

The legal issues raised by Leon–Dielmann's motion to dismiss for lack of personal jurisdiction are well-settled. The courts of this Circuit regularly enforce forum-selection clauses under the principles the Supreme Court announced in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). *See Luce v. Edelstein*, 802 F.2d 49, 57 (2d Cir. 1986); *Bense v. Interstate Battery System of America*, 683 F.2d 718, 721 (2d Cir.1982); *Karl Koch Erecting Co. v. New York Convention Center Development Corporation*, 656 F.Supp. 464, 467 (S.D.N.Y.1987); *Ronar Inc. v. Wallace*, 649 F.Supp. 310, 313 (S.D.N.Y.1986). New York courts will also defer to choice-of-law clauses in contracts provided the state whose law is selected has sufficient contacts with the transaction. *See, e.g., Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir.1984); *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir.1984); *Haag v. Barnes*, 9 N.Y.2d 554, 559, 216 N.Y.S.2d 65, 175 N.E. 2d 441 (1961); *A.S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369, 381, 165 N.Y.S.2d 475, 144 N.E.2d 371 (1957).

These firmly established principles notwithstanding, Leon–Dielmann contends that the forum-selection clause should not be enforced. Leon–Dielmann asserts that

the choice-of-law clause requires this court to follow New York's choice-of-law rules and that under New York's "most significant contacts" rule, Texas law properly governs the enforceability of the forum-selection clause. Leon–Dielmann then argues that under Texas law forum-selection clauses are not enforceable. Neither Leon–Dielmann's choice-of-law analysis nor its contention as to Texas law need be addressed, however, in order to dismiss Leon–Dielmann's argument and uphold the validity of the forum-selection clause.

■ The choice-of-law clause explicitly states that the laws of the State of New York, *exclusive* of its choice-of-law rules, shall govern the legality, validity and performance of the agreements between the parties. Because such clauses are prima facie valid under New York law, *S. Leo Harmonay, Inc. v. Binks Mfg. Co.*, 597 F.Supp. 1014, 1025 (S.D.N.Y.1984), this court need only consider whether New York has sufficient contacts with the transaction that has given rise to this dispute. Although both 600 Grant Street and its general partner DCGP are organized under the laws of Connecticut, the headquarters of both DCGP and the selling agent for 600 Grant Street are in New York. All documents executed by Leon–Dielmann and all of the other limited partners were prepared and executed by DCGP in New York. All payments under the Notes were payable in New York. Indeed, the center of gravity of the hundreds of limited partnerships sponsored by Integrated, of which 600 Grant Street is one, is New York, doubtless due in large part to New York's position as a major financial center. Under these circumstances, the present transaction has sufficient contacts with New York to warrant the application of its law to the instant action in accordance with the parties' agreement.

Dielmann is a sophisticated businessman and lawyer who concedes that he examined the documents he received from 600 Grant Street before signing them on behalf of the partnership he had created with Leon, himself a sophisticated business man and lawyer. The forum-selection clause to which

Leon–Dielmann consented not only selected New York as a forum but also contained an affirmative consent to personal jurisdiction and venue in New York and barred Leon–Dielmann from raising the very objections that it presents to the court by way of the instant motion. As Judge Friendly observed in enforcing a forum-selection/choice of law clause in *AVC Nederland B.V. v. Atrium Investment Partnership*, 740 F.2d 148, 156 (2d Cir.1984), "[t]here can be nothing 'unreasonable and unjust' in enforcing such an agreement; what would be unreasonable and unjust would be to allow [defendants] to disregard it."

Finally, the exercise of personal jurisdiction over Leon–Dielmann is consistent with due process under the Fourteenth Amendment. In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court held that where a party establishes a continuing relationship with a contracting party's headquarters in the state, receives full notice from the contract documents and course of dealing that he might be subject to suit in that state, and fails to demonstrate how jurisdiction in that forum would be fundamentally unfair, the state's exercise of jurisdiction over the unwilling party will not offend due process. *Burger King*, 471 U.S. at 487, 105 S.Ct. at 2190. The Court based its decision on several "contacts" it deemed to be significant in the context of a contractual relationship: (1) defendant deliberately reached out to contract with a party in another state; (2) the relationship was to last a substantial time; (3) a failure to make payments to the contracting party cause injury in that state; (4) the contract provided that the entities' operations were conducted in that state and that payments were to be made there; (5) the "decision-making" authority of the entity was vested in that state; (6) the documents provided for dispute resolution to be undertaken in that state; and (7) that state's law was to govern the agreement. *Burger King*, 471 U.S. at 478–82, 105 S.Ct. at 2185–87.

Under these guidelines, Leon–Dielmann has established the requisite contacts with New York. Leon–Dielmann invested in a limited partnership whose activities were to be conducted in New York. Under the Note, Leon–Dielmann was to make twenty-six payments to DCGP in New York stretching over a seven year period. Upon Leon–Dielmann's default, the interruption of the stream of payments caused injury in New York. The Offering Memorandum notified Leon–Dielmann that 600 Grant Street's principal offices were in New York, and both Dielmann and Leon had telephone conversations with counsel and representatives of 600 Grant Street in New York with respect to the limited partnership. Finally, the partnership documents explicitly provide that New York courts would have jurisdiction over any suits arising out of the contracts and that New York law would govern. These contacts with New York satisfy the Supreme Court's minimum contacts analysis in *Burger King* and warrant enforcement of the forum-selection clause in this case.

*The Motion to Transfer*

█ As discussed briefly above, Leon–Dielmann voluntarily consented to the jurisdiction of this court and explicitly waived any right to object either to the exercise of that jurisdiction or to the propriety or inconvenience of the forum. However, leaving aside for the moment Leon–Dielmann's explicit agreement not to submit a motion such as the instant one, it has been held that a "party who signs an agreement containing venue and jurisdiction selection clauses may be deemed to have waived his right to assert his own convenience as a factor favoring a transfer to another forum under Section 1404(a)." *Leasing Service Corp. v. Graham*, 646 F.Supp. 1410, 1415 (S.D.N.Y.1986). Absent a showing that it would be deprived of its day in court, Leon–Dielmann cannot be released from its selection of New York as the forum for the resolution of disputes arising from its investment in 600 Grant Street. *See id.* at 1416.

Leon–Dielman has made no showing that litigation of this controversy in New York would be so inconvenient as to warrant a transfer to Texas. The possible inconvenience to Leon and Dielmann caused by travel to New York in connection with this dispute pales in the face of the inconvenience the plaintiff, 600 Grant Street, will

suffer if this action is transferred to Texas. 600 Grant Street has identified ten witnesses from the New York offices of 600 Grant Street, IREC, Integrated and DCGP who were involved in the collection of payments to the limited partnership and the resale of Leon–Dielmann's partnership interest. In addition, all documents relating to the resale of the partnership interest are in New York.

Finally, it would not be in the interest of justice to disregard the forum-selection clause and transfer this case elsewhere. Integrated and IREC's offices in New York coordinated the sales of all units of 600 Grant Street to 701 limited partners in forty-two states. The forum-selection clause to which each of these limited partners consented avoids piecemeal litigation and the likelihood of inconsistent determinations of the rights of 600 Grant Street and its limited partners. It would be counterproductive to permit defaulting limited partners of 600 Grant Street to force the transfer of litigation to any of the different states in which they reside.

For the reasons set forth above, Leon–Dielmann's motion to dismiss the complaint or, in the alternative, to transfer this action to the Western District of Texas is denied. In a letter to the court dated January 27, 1988, 600 Grant Street consented to a dismissal of the complaint without prejudice and without costs as against Dielmann individually if the court were to retain jurisdiction over Leon–Dielmann. Accordingly, in view of the denial of the instant motion, the complaint will be dismissed without prejudice and without costs as against Dielmann.

Because the instant motion was not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, Leon–Dielmann is directed to reimburse 600 Grant Street for the reasonable expenses it incurred defending this motion.

IT IS SO ORDERED.