851 F.Supp. 556 (1994)
In re INTEGRATED RESOURCES, INC. REAL ESTATE LIMITED PARTNERSHIPS SECURITIES LITIGATION.
KINLEY CORPORATION, Kinley Corporation Profit Sharing Plan, Kinley Corporation Deferred Benefit Plan, Kinley Corporation Employee Benefit Plan, Edith Kinley, Independent Executrix of the Estate of John C. (Jack) Kinley, Edith Kinley, Karl S. Kinley and Melinda Kinley, Plaintiffs,
v.
INTEGRATED RESOURCES EQUITY CORP., Royal Alliance Associates, Inc., Resources Trust Company, The Select Groupo F/K/A Planning Ahead, Inc., John A. (Jack) Sorcic, 342 Madison Avenue Associates Limited Partnership, Mid-Atlantic Residential Investors Limited Partnership, Cablevision of Baton Rouge, Ltd., Satellite Equipment Trust A, Satellite Equipment Trust B, Mellon Bank, N.A. and Millenium Financial Services, Inc., Defendants.
MDL No. 897. Misc. 21-61 (RWS). 92 Civ. 4455 (RWS).
United States District Court, S.D. New York.
April 28, 1994.
*557 *558 *559 The Carlton Firm, P.C., Dallas, TX (Dean Carlton, of counsel), for plaintiffs.
Serchuk & Zelermyer, White Plains, NY (Kevin F. Cavaliere, of counsel), for defendants John A. (Jack) Sorcic and The Select Group, f/k/a Planning Ahead, Inc.
Gilbert, Segall & Young, New York City (Jeffrey E. Livingston, of counsel), for defendants Royal Alliance Associates, Inc. and Resources Trust Company.
Lord, Day & Lord, Barrett Smith, New York City (Carol Quackenbos, Eugene F. Bannigan, of counsel), for Defendant Satellite Equipment Trust A Satellite Equipment Trust B.
Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York City (Steven M. Pesner, David M. Zensky, of counsel), for defendant Mid-Atlantic Residential Investors L.P. and 342 Madison Avenue Associates.
Townley & Updike, New York City (Jonathan than M. Herman, Zvi Raskin, of counsel), for defendant Integrated Resources Equity Corp. and Millenium Financial Services, Inc.
Blank, Rome, Comiskey & McCauley, Philadelphia, PA (Matthew J. Siembieda, Alexander D. Bono, George J. Krueger, Carl M. Buchholz, of counsel), for defendant Mellon Bank, N.A.

OPINION
SWEET, District Judge.
Plaintiffs Kinley Corporation; Kinley Corporation Profit Sharing Plan; Kinley Corporation Deferred Benefit Plan; Kinley Corporation Employee Benefit Plan; Edith Kinley, Independent Executrix of the Estate of John C. (Jack) Kinley; Edith Kinley; Karl Kinley; and Melinda Kinley (collectively, "Kinley" or "Plaintiffs") have moved for a suggestion of remand of this case to the Judicial Panel on Multidistrict Litigation (the "Panel"). In the alternative, the Plaintiffs move for leave to amend their complaint (the "Complaint"). Also, the Plaintiffs request the Court to stay this action pending certain developments in the Integrated Resources bankruptcy proceedings.
Defendant Mellon Bank, N.A. ("Mellon") has moved for an order, pursuant to Rule 12, *560 Fed.R.Civ.P., dismissing the Complaint. Defendants John A. ("Jack") Sorcic and The Select Group f/k/a Planning Ahead, Inc. (collectively, "Sorcic"), have moved for an order, pursuant to Rules 12 and 56, Fed.R.Civ.P., granting summary judgment in their favor and dismissing the Complaint. Defendants Satellite Equipment Trust "A" and Satellite Equipment Trust "B" (collectively, "Satellite") have moved for an order, pursuant to Rules 12, 9, and 17, Fed.R.Civ.P., dismissing the Complaint. Defendant Mid-Atlantic Residential Investors Limited Partnership ("Mid-Atlantic") has moved for an order, pursuant to Rules 12 and 9, Fed.R.Civ.P., dismissing the Complaint.[1] Defendant Royal Alliance Associates, Inc. has moved for an order, pursuant to Rule 59, Fed.R.Civ.P., dismissing the Complaint.
For the following reasons, the Plaintiffs' motion for a suggestion of remand is denied, the Plaintiffs request for a stay is denied, and the Plaintiffs are granted leave to replead. The Defendants' motions are granted with the exception of their demands that the dismissal of the Complaint be with prejudice.

Parties
The background of the cases involved in this multi-district litigation has been extensively described in previous opinions of this Court, familiarity with which is assumed. See, e.g., In re Integrated Resources Real Estate Ltd. Partnerships Secs. Litig. (S.D.N.Y. April 4, 1994); In re Integrated Resources Real Estate Ltd. Partnerships Secs. Litig., 850 F.Supp. 1105 (S.D.N.Y.1993) ("Global III & IV"); In re Integrated Resources Real Estate Ltd. Partnerships Secs. Litig., 815 F.Supp. 620 (S.D.N.Y.1993) ("Global I & II").
The Plaintiffs are the Kinley Corporation (the "Corporation") and its affiliates, all of whom are domiciled or resident in Harris County, Texas. John C. ("Jack") Kinley, now deceased, and his widow, Edith Kinley, were directors, officers, and principal stockholders of the Corporation and allegedly individually invested with the Defendants. Edith Kinley is the duly appointed independent executrix of the estate of Jack Kinley.
Karl S. Kinley, the son of Jack and Edith, is an officer, director, and stockholder of the Corporation. Karl, with his wife Melinda Kinley allegedly individually invested with the Defendants.
Kinley Corporation Profit Sharing Plan, Kinley Corporation Deferred Benefit Plan, and Kinley Corporation Employee Benefit Plan are each benefit plans created for the officers and employees of the Corporation and each allegedly invested with the Defendants.
In connection with their investments, Plaintiffs Jack, Edith, Karl, and Melinda Kinley executed subscription agreements pursuant to which they represented that they were sophisticated with regard to financial matters, that they had received the offering memoranda, read and understood the contents thereof, and were afforded a chance to review it with their own purchaser representatives, advisors, attorneys, and/or accountants.
Integrated Resources, Inc. ("Integrated") allegedly sponsored certain investment vehicles purchased by the Plaintiffs, but has not been joined in this action due to its having filed for protection under the federal bankruptcy statutes. Defendant Integrated Resources Equity Corp. is a wholly owned and controlled corporate subsidiary of Integrated Resources, Inc.
John A. Sorcic ("Sorcic") is a resident of Houston, Texas. Defendants The Select Group f/k/a Planning Ahead, Inc. and Royal Alliance Associates, Inc. ("Royal") are, or were, Texas corporations. The Plaintiffs allege that Sorcic is the controlling person and alter ego of Planning Ahead and Royal and their affiliates.
Western Bank ("Western") was a national banking association in Houston, Texas, which has allegedly been closed by the FDIC.
*561 342 Madison Avenue Associates Limited Partnership is a Connecticut limited partnership which has filed a voluntary petition in bankruptcy. Defendant Mid-Atlantic Residential Investors Limited Partnership is a Connecticut limited partnership. Cablevision of Baton Rouge, Ltd. is a Louisiana limited partnership.[2] Defendants Satellite Equipment Trust "A" and Satellite Equipment Trust "B" are each "grantor trusts," with their trustee being IBJ Schoder Bank & Trust Co. Defendant Mellon Bank, N.A. is a banking institution located in New York. Defendant Millennium Financial Services, Inc. is a corporation with its principal office in New York City. Millennium allegedly acts for Mellon Bank in the collection of promissory notes signed by certain of the Plaintiffs (the "Notes").

Facts[3]
The Plaintiffs allege that, commencing in the late 1970's or early 1980's, Integrated and its affiliates launched a nationwide conspiracy to defraud the investing public. The alleged conspiracy involved Integrated and its affiliates' creating a "project," such as a limited partnership or equipment lease arrangement. Such projects included the investments at issue in the present case.
The alleged conspirators would sell shares in the projects at inflated prices through broker dealers, investment advisors, and other entities who were allegedly being induced to influence their respective clients through undisclosed commissions, front loads, and exorbitant fees. The sales to investors were allegedly made with long term financing through prearranged schemes with financial institutions which would finance the project and thereafter frustrate any claims of the investors. This scheme allegedly contemplated that the investors would, for the most part, pay for the securities with long term investor Notes which would be refinanced, or used as collateral, by the holder through Mellon and its co-lenders, and with Integrated and its affiliates guaranteeing the Notes.
The Plaintiffs further allege that, at some time prior to 1984, Sorcic became a registered investment advisor and commenced holding himself out to the public as an independent expert in the field of investments and actively soliciting investors to utilize his services. Sorcic allegedly utilized Planning Ahead, Royal, and other controlled entities to market his services and conduct his business. Sorcic also allegedly caused financial institutions, including Western, to make presentations to the institutions' customers, including the Plaintiffs, and that, in furtherance of the conspiracy, these institutions represented and confirmed the veracity, good faith, and expertise of Sorcic and his affiliates.
At these presentations, Sorcic allegedly represented that securing the services of an investment advisor was the safest and best way for an investor to invest and maintain a portfolio, since they were independent and without conflicts of interest, did not have holdings in the particular securities which could be influenced by their recommendations, would not be dependent upon commissions or inducements to recommend specific investments, would not, absent specific disclosure to and consent of the investor, receive commissions, fees or other inducements from the issuers, broker dealers or their affiliates, and would be, and in utmost good faith act as, fiduciaries to the investors and in the investor's best interests.
The Plaintiffs allegedly invested in three different limited partnerships and two grantor trusts sponsored by Integrated. All of these investments were made between November, 1984, and August, 1986. (Compl. ¶ 17, Quinn Aff. ¶ 11.)[4]

*562 Prior Proceedings

Plaintiffs filed their complaint in Texas state court in November 1991. Thereafter, the Defendants removed the action to the United States District Court for the Northern District of Texas, and petitioned the Panel to consolidate the case with others pending in this court. Over the Plaintiffs' objections, the Panel transferred the action to this Court on June 3, 1992. Subsequently, this Court orally stayed motion practice in this case pending its decision on certain motions filed in related cases. Argument was heard on the present motions on February 23, 1994, and they were considered fully submitted as of that date.

Discussion

Suggestion of Remand
The Plaintiffs have moved this court for a suggestion of remand to the Judicial Panel on Multidistrict Litigation. On October 10, 1991, the Panel ordered the consolidation and transfer of the Integrated cases. In re Integrated Resources, Inc. Real Estate Limited Partnerships Secs. Litig., Doc. No. 897 (J.P.M.L. Oct. 10, 1991) (the "Transfer Order"). The Kinley case was transferred as a tag-along case in June, 1992. The basis for the Panel's October 10 Transfer Order was as follows:
[T]he actions in this litigation involve common questions of fact and ... transfer under Section 1407 to the Southern District of New York will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. These common factual questions arise because each of the actions before the Panel focuses on the adequacy of disclosure in connection with limited partnership offerings sponsored and controlled by Integrated Resources, Inc. (Integrated) and its affiliates. Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.
Rule 14(c), Fed.R.Jud. Panel, provides that the Panel shall consider the remand of a transferred action upon the "suggestion of the transferee district court." A judge should make such a suggestion when he or she perceives his or her role in the case has ended. In re Holiday Magic Secs. & Anti-trust Litig., 433 F.Supp. 1125, 1126 (J.P.M.L. 1977).
Once a transfer order is entered by the Panel, a party seeking remand to the transferor court has the burden of establishing that such remand is warranted. In re Holiday, 433 F.Supp. at 1126. The Panel has made it clear that it will "remand an action ... prior to completed pretrial proceedings only upon a showing of good cause." In re South Cent. States Bakery Prods. Antitrust Litig., 462 F.Supp. 388, 390 (J.P.M.L. 1978).
The Plaintiffs concede that their "allegations do include the underlying mis-representations and omissions relating to the investment partnerships." (Pls.' Request for Suggestion of Remand ¶ 1.) As noted in the Transfer Order, the original transfer was based on "common questions of fact" related to the "adequacy of disclosure in connection with [Integrated's limited partnership offerings]." Thus, the factors relied on by the Panel for the original transfer remain valid.
The Panel has previously held that a common issue of the propriety of offering materials used to sell a security justifies consolidation. In re Revenue Props. Co., 314 F.Supp. 1255 (J.P.M.L.1970) (denying remand of tag-along case with local issues and defendants because consolidated cases involved question of whether the securities at issue were registered properly).
The "Texas" nature of this case, created by the fact that the allegations concern misrepresentations and omissions by a Texas investments advisor to Texas Plaintiffs, does not justify a suggestion of remand, since as discussed infra, certain of the Plaintiffs' claims are governed by New York law. The Plaintiffs' motion for a suggestion of remand is denied. Cf. Global III & IV, 850 F.Supp. at 1133, (denying similar motions by plaintiffs in other "Integrated" cases).

*563 Standards for Motions to Dismiss and for Summary Judgment

The standard of review under Rule 12(b)(6) requires the court to accept as true all reasonable inferences which can be drawn from the complaint. A complaint is not to be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); accord Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).
A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Silver v. City Univ., 947 F.2d 1021, 1022 (2d Cir.1991). The moving party bears the burden of proving that no genuine issue of material fact exists. Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir.1988); Pittston Warehouse Corp. v. American Motorists Ins. Co., 715 F.Supp. 1221, 1224 (S.D.N.Y.1989), aff'd, 954 F.2d 62 (2d Cir.1992).
The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." Brady, 863 F.2d at 210; see also Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir.1992); Burtnieks v. City of New York, 716 F.2d 982, 983-84 (2d Cir.1983); Swan Brewery Co. v. United States Trust Co., 832 F.Supp. 714, 717 (S.D.N.Y.1993).
However, the remedy of summary judgment is viewed as an integral part of the Federal rules as a whole, which are designed "`to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted). Once the moving party has met its burden of coming forward with evidence to show that no material fact exists for trial, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Claims Arising under Texas Law
The Plaintiffs assert claims arising the Texas Securities Act, the Texas Commercial Bribery Statute, and the Texas Usury statute.[5] The limitations period governing claims under the Texas Securities Act is contained in § 33(H), Texas Rev.Civ.Stat.Ann. art. 581-33(H), which provides that an action for a violation of the Texas Securities Act cannot be brought "more than three years after discovery of the untruth or omission" or "more than five years after the purchase." The Texas Supreme Court has stated that a claim under the Texas Securities Act may "in no event" be made more than five years after the sale. Williams v. Khalaf, 802 S.W.2d 651, 655 n. 3 (Tex.1990). The limitations period governing an aiding and abetting claim is the same three year/five year structure applicable to claims against an actual seller. See Tex.Civ.Stat.Ann. art. 581-33(F) and (H)(2).
Since the Plaintiffs made their purchases no later than August 1986, and the original complaint in this matter was filed in November 1991, all of the Plaintiffs' claims under the Texas Securities Act are time-barred.

Commercial Bribery
Plaintiffs assert that the Defendants violated the Texas Commercial Bribery Statute, Texas Penal Code Ann. § 32.43, by paying or accepting "secret inducements" in connection with the Plaintiffs' investments. Under this statute, "commercial bribery" is an indictable criminal offense, but there is no express private right of action.
*564 No case has come to the Court's attention in which a private cause of action for commercial bribery has been implied under this statute. In the absence of any guidance from state courts, federal courts are hesitant to imply private rights of action from state criminal statutes. See Agresta v. Goode, 797 F.Supp. 399, 409 (E.D.Pa.1992); Agnew v. City of Bryan, Civ.A. No. H-84-4407, 1986 WL 15158, at *1 (S.D.Tex. Dec. 23, 1986) ("Plaintiff ... has not cited any authority to support a private cause of action under [certain] sections of the Texas Code of Criminal Procedure, and the Court finds none.").
Moreover, courts should consider whether a private right of action is necessary to protect the intended beneficiaries of a statute when determining whether to imply a private right of action. Cort v. Ash, 422 U.S. 66, 78-81, 95 S.Ct. 2080, 2087-89, 45 L.Ed.2d 26 (1975) (discussing factors federal courts consider in determining whether a private right of action should be implied under federal criminal statute). There is no reason to imply a private action under this penal statute because if Plaintiffs' allegations have merit, they will be entitled to recovery on their common law claims for breach of fiduciary duty.
There is no private right of action under the Texas Commercial Bribery statute, and the Plaintiffs' claims under this statute are dismissed.

Usury
The Complaint asserts a claim under the Texas Usury Statute, in that the Defendant Millennium, in behalf of Mellon and the related lenders and Integrated and its affiliates, charged a usurious rate of interest on the Notes with which the Plaintiffs purchased their investments. Specifically, the Plaintiffs allege that the Notes called for 12% annual interest, and allowed for a 2% per month default fee, totaling 24% per annum. In addition, the Plaintiffs allege that Defendants Millennium, acting as agent for Mellon and pursuant to the overall plan and conspiracy, charged late fees. The combination of these charges, the Plaintiffs allege, were in excess of 36% per annum and therefore violated Tex.Rev.Civ.Stat. art. 5069-1.01 et seq. (Pls.' Mem. at 22.) The Plaintiffs further assert that, even if the New York usury laws were applied, the rates charged by the Defendants on the Notes would exceed the 16% limit set forth in N.Y.Gen.Ob.L. § 5-501.
As an initial matter, the Court must apply New York law to the Plaintiffs' usury claims. In a transferred federal action involving state law claims, the law of the transferor forum applies in the transferee court to the state law claims. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); In re Energy Sys. Equip. Leasing Secs. Litig., 642 F.Supp. 718, 744 (E.D.N.Y. 1986).
Under Texas choice of law principles, if the parties have by contract selected the law of a foreign state, the law of such foreign state will govern their dispute so long as there is a reasonable relationship between such foreign state and the transaction at issue. Davidson Oil Country Supply Co. v. Klockner, Inc., 908 F.2d 1238, 1248 (5th Cir. 1990); Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Dev. Co., 642 F.2d 744, 749-50 (5th Cir.1981). The chosen forum lacks a reasonable relation to the transaction if it "has no normal relation to the transaction." Davidson, 908 F.2d at 1248 n. 29.
The investments at issue in the present case bear a reasonable relation to New York. As determined by this Court in an action involving another Integrated-sponsored partnership, New York "is the center of gravity of the hundreds of limited partnerships sponsored by Integrated." 600 Grant St. Assocs. Ltd. Partnership v. Leon-Dielmann Invest. Partnership, 681 F.Supp. 1062, 1064 (S.D.N.Y.1988) (denying motion of Texan limited partners to dismiss or transfer).
In the present case, the Plaintiffs executed subscription documents and Notes that expressly provided that they would be governed by New York law. Accordingly, this Court will apply the laws of New York to the Plaintiffs' usury claims. See Davidson, 908 F.2d at 1248 (New York, rather than Texas, usury law applicable where subject contract provided that New York law governed the transaction); Woods-Tucker, 642 F.2d at 749-50 (Mississippi, rather than Texas *565 usury law applies to transaction even though Texas had most significant contacts with transaction).
The Plaintiffs' specific claim of usury is that "[d]efendants have charged usurious interest on the investor notes through the demands of Millennium made in 1991." (Compl. at ¶ 19.) Thus, the Plaintiffs' usury claim pertains only to the Madison and Mid-Atlantic Notes, in as much as the Notes relating to Satellite "A," Satellite "B," and Cablevision were paid in full by 1989 (Jacobs Aff. ¶ 12.)
Under New York law, the maximum rate of interest permitted to be charged is sixteen percent. N.Y.Gen.Ob.L. § 5-501; N.Y. Banking L. § 14-a(1). In this case, the basic interest rates under the Notes for each of the Plaintiffs' investments is less than 16%. Any penalty interest rates or late fees assessed against the Plaintiffs do not constitute usury, since New York's usury statutes do not apply to defaulted obligations. Manfra, Tordella & Brookes, Inc. v. Bunge, 794 F.2d 61, 63 n. 3 (2d Cir.1986); Bruce v. Martin, 845 F.Supp. 146 (S.D.N.Y.1994). Consequently, the Plaintiffs' usury claims are dismissed.

Declaratory Judgment Regarding the Investor Notes
The Complaint also requests a judgment declaring the Notes void and without obligation on the Plaintiffs because Mellon is not a holder in due course of the Notes.
For the reasons discussed above, the Notes are governed by New York law. To qualify as a holder in due course under New York law, the holder must take a note for value, in good faith and without notice of any defense against or claim to it by any person. N.Y.U.C.C. § 3-302. "Good faith" is defined as "honesty in fact in the conduct or transaction concerned." N.Y.U.C.C. § 1-201(19). A holder has "notice" only of those claims or defenses of which it has actual knowledge or "knowledge of such facts that his action in taking the instrument amounts to bad faith." N.Y.U.C.C. § 3-304(7); See Hartford Accident & Indem. Co. v. American Express Co., 74 N.Y.2d 153, 162, 544 N.Y.S.2d 573, 542 N.E.2d 1090 (1989). Otherwise stated:
Holders in due course are to be determined by the simple test of what they actually knew, not by speculation as to what they had reason to know, or what would have aroused the suspicion of a reasonable person in their circumstances.
Hartford Accident & Indem. Co., 74 N.Y.2d at 163, 544 N.Y.S.2d 573, 542 N.E.2d 1090.
"A party challenging the good faith and lack of notice of a holder bears a substantial burden. Complaints based on such allegations must be dismissed unless there exist `material issues of fact ... which are "genuine and based on proof, not shadowy and conclusory statements."'" Fidelity Bank, N.A. v. Avrutick, 740 F.Supp. 222, 236 (S.D.N.Y.1990) (quoting First International Bank v. L. Blankstein & Son, 59 N.Y.2d 436, 465 N.Y.S.2d 888, 892, 452 N.E.2d 1216, 1220 (1983)); see also Ecoban Capital, Ltd. v. Ratkowski, 712 F.Supp. 1120, 1123 (S.D.N.Y. 1989) (conclusory allegations attacking holder in due course status are insufficient), aff'd, 909 F.2d 1472 (2d Cir.1990); Union Bank of India v. Seven Seas Imports, Inc., 727 F.Supp. 125, 130 (S.D.N.Y.1989); Chemical Bank of Rochester v. Haskell, 51 N.Y.2d 85, 92-94, 432 N.Y.S.2d 478, 411 N.E.2d 1339 (1980).
In defense of their claim, the most that Plaintiffs allege is that:
As prearranged, Integrated and affiliates caused the holders (i.e., the specific investment partnership or device) to borrow funds from Mellon (or other) lenders and the investor notes were used as collateral therefor; Mellon was acting for itself and undisclosed other financial institutions in providing the additional financing for the borrower with full knowledge that such funds were for the benefit of the excessive profits, front loads, fees and commissions. ...
* * * * * *
Neither Integrated and affiliates, the holders, Mellon or Millennium (or any other related lender) are, nor have been, holders in due course of any of said investment notes....
(Compl. ¶¶ 18-18.1.)
In seeking to vacate a default judgment in Mellon's favor on these Notes in New York *566 Supreme Court, the Kinleys argued, as they do here, that Mellon was not a holder in due course of the Notes, and that it had aided and abetted the fraud perpetrated upon the Kinleys. (Mellon Supp.Mem.Ex. A at 6-7.) Although motions to vacate default judgments are viewed liberally in New York, Justice Ira Gammerman of the New York Supreme Court found that "it appears from the papers that [the Kinleys] have no meritorious defense to the [Notes]." (Mellon Supp. Mem.Ex. C at 2.)
The cases cited by the Plaintiffs do not support their position that their conclusory allegations of bad faith on the part of Mellon are sufficient to survive this motion to dismiss. In First City Fed. Savs. Bank v. Bhogaonker, 684 F.Supp. 793, 797 (S.D.N.Y. 1988), this Court held that "[w]here well-pleaded allegations of bad faith place the subjective knowledge of the holder at issue, summary judgment is rarely appropriate." In the case at bar, Plaintiffs' broad allegation of bad faith cannot be described as "well-pleaded."
In Ameritrust Co. N.A. v. Dew, 1992 WL 84479, at *5, 1992 U.S. Dist. LEXIS 4877, at *14 (S.D.N.Y. April 13, 1992), this Court denied the plaintiff bank's motion for summary judgment where defendant asserted that the bank "had actual knowledge of facts (e.g., cost overruns, the Project's worth, and that Project's debt) jeopardizing their positions." The Plaintiffs allege no such facts in the case at bar, in fact Plaintiffs fail to plead in their Complaint or in their response to Mellon's motion to dismiss any specific facts relating to Mellon's alleged bad faith that would preclude Mellon's status as a holder in due course.
Given the absence of any specific factual allegations that Mellon had actual notice of defenses or claims against the Notes at the time they were acquired, this Court agrees with Justice Gammerman that the Plaintiffs have not raised a question of fact regarding Mellon's status as a holder in due course of the Notes. Plaintiffs' claim for a declaratory judgment that the Notes are void and that Mellon was not a holder in due course is dismissed.[6]

Federal Securities Acts
In a transferred federal action, the law of the transferee court governs federal law issues. Menowitz v. Brown, 991 F.2d 36, 39-40 (2d Cir.1993); Global I & II, 815 F.Supp. at 635-37. The Complaint asserts a claim under. "The Securities Act of 1933," without specifying what section or sections allegedly were violated. Presumably, Plaintiffs are referring to Section 12(2) of the 1933 Act, 15 U.S.C. § 771(2), which provides for civil liability for certain statements or omissions in connection with prospectuses and communications.
Section 13 of the 1933 Act, 15 U.S.C. § 77m, mandates that all claims under Section 12(2) be:
brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought ... more than three years after the sale.
The "three-year time limit in Section 13 is an absolute outer limit." Global I & II, 815 F.Supp. at 631 (quoting Bresson v. Thomson McKinnen Sec., Inc., 641 F.Supp. 338, 343 (S.D.N.Y.1986)). This limitation applies equally to claims of aiding and abetting violations of Section 12 of the 1933 Act. Heaney v. Associated Bank, N.A., No. 88-C-913, 1990 WL 446707, at *9-12, 1990 U.S. Dist. LEXIS 17317, at *26-*33 (E.D.Wis. July 11, 1990).
While the Complaint never mentions Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(b) ("Section 10(b)"), if the Plaintiffs were purporting to assert a claim under this section, it would be time-barred.
*567 The Supreme Court in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 360-64, 111 S.Ct. 2773, 2781-82, 115 L.Ed.2d 321 (1991) held that Section 10(b) claims must be brought within one year after discovery of the facts constituting the violation or within three years of such violation, and that this rule is absolute and cannot be tolled under the "fraudulent concealment" or "discovery" doctrines. Lampf, 501 U.S. at 363, 111 S.Ct. at 2782.
In their opposition brief, the Plaintiffs argue that certain omissions by the Sorcic Group constitute violations of the Investment Advisers Act, 15 U.S.C. § 80b-1 et seq. (the "IAA"). (Pls.' Mem. at 3.)
The limitations period applicable to claims under the IAA is the same as that for claims under the 1933 and 1934 Securities Acts, one year from discovery and three years from the alleged violation. Kahn v. Kohlberg, Kravis, Roberts & Co., 970 F.2d 1030, 1039 (2d Cir.), cert. denied, ___ U.S. ___, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992).
Plaintiffs' final purchase of the securities involved in this case occurred, at the latest, in August 1986, while the Complaint was not filed until November 1991. As this action was commenced more than three years after the transactions at issue, no claim under the Securities Acts of 1933 or 1934, or the IAA, can be asserted.

Mail and Wire Fraud
The complaint appears to assert independent damage claims for alleged violations of federal mail and wire fraud statutes. (Compl. ¶¶ 26.4 et seq.) This claim must be dismissed as a matter of law, because there is no private right of action under the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. See Official Pubs., Inc. v. Kable News Co., 884 F.2d 664, 667 (2d Cir.1989).

RICO
The Complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"). RICO claims are subject to a four year statute of limitations. Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). The limitations period begins to run from the time Plaintiffs knew or should have known of their alleged RICO injury or claim. Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1103 (2d Cir.), cert. denied, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). "In cases like this onewhere plaintiffs acquire an interest in a limited partnership in reliance on allegedly fraudulent offering materialthe injury to the plaintiffs is the actual purchase of the partnership interest." Ackerman v. National Property Analysts, Inc., 1992 WL 240605, at *5, 1992 U.S. Dist. LEXIS 13502, at *15-*16 (S.D.N.Y. Sept. 9, 1992); see also Global III & IV, 850 F.Supp. at 1118-19.
The limitations period for a fraud-based RICO action commences when Plaintiffs are placed on notice of facts which should arouse suspicion. Such facts can include substantial conflicts between alleged oral representations and representations made in offering materials. This Court has held that:
The information that triggers inquiry notice of the probability of an alleged securities fraud is any financial, legal or other data available to the plaintiffs providing them "with sufficient storm warnings to alert a reasonable person to the (probability) that there were either misleading statements or significant omissions involved in the sale of the (securities)." Such data may come in the form of the letters and other documents provided to limited partners by the partnership, the offering materials themselves, and public disclosures in the media about the financial condition of the defendant and other lawsuits alleging fraud committed by the defendant.
Global I & II, 815 F.Supp. at 639 (citations omitted); see also Dodds v. Cigna Secs. Inc., 12 F.3d 346, 352 (2d Cir.1993) (conflict between conversations with investment advisor regarding need for conservative portfolio and disclosures of risks in offering materials constitutes "storm warning" sufficient to create inquiry notice).
These same principles control the resolution of when Plaintiffs herein knew or *568 should have known of their RICO claims. See Dolan v. Rothschild Reserve Int'l, Inc., 1991 WL 155770, 1991 U.S. Dist. LEXIS 10831 (S.D.N.Y. Aug. 6, 1991); Marlow v. Gold, No. 89 civ. 8589, 1991 WL 107268 (S.D.N.Y. June 13, 1991); Griffin v. McNiff, 744 F.Supp. 1237, 1255-56 (S.D.N.Y.1990), aff'd, 996 F.2d 303 (2d Cir.1993). The Plaintiffs' sophistication in financial matters can be considered in determining when inquiry notice was triggered. Marlow v. Gold, No. 89 Civ. 8589, 1991 WL 107268, at *9 (S.D.N.Y. June 13, 1991).
"The time from which the statute of limitations begins to run is not the time at which a plaintiff becomes aware of all of the various aspects of the alleged fraud, but rather the statute runs from the time at which the plaintiff should have discovered the general fraudulent scheme." Dolan, 1991 WL 155770, at *2, 1991 U.S.Dist. LEXIS 10831, at *4 (quoting Klein v. Bower, 421 F.2d 338, 343 (2d Cir.1970)); accord Global I & II, 815 F.Supp. at 651. For statute of limitations purposes, the issue is not whether a plaintiff obtains all of the facts regarding the alleged fraud, but rather whether he or she "had constructive notice of facts sufficient to create a duty to investigate further into the matter. An investor does not have to have notice of the entire fraud being perpetuated to be on inquiry notice." Dodds, 12 F.3d at 352. In Dodds, the Second Circuit confirmed the use of the inquiry notice doctrine in cases involving securities fraud, and the propriety of resolving the question of inquiry notice as a matter of law on a motion to dismiss. Dodds, 12 F.3d at 352 n. 3 (citing Global I & II, 815 F.Supp. at 639 n. 7).
Once an investor has been placed on inquiry notice of his or her claims, alleged assurances respecting the subject investment or unsubstantiated claims of fraudulent concealment will not operate to further extend the RICO limitations period. Griffin, 744 F.Supp. at 1256. "[A] plaintiff must demonstrate that it remained ignorant of the cause of action until a point in time less than four years prior to the commencement of the action, such ignorance not being attributable to any lack of diligence on the part of the plaintiff." Companhia Siderurgica Nacional v. D.B. Organ Co., 1991 WL 89645, at *5, 1991 U.S.Dist. LEXIS 6848, at *15-*16 (S.D.N.Y. May 22, 1991) (citing New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir.), cert. denied, 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988)); see also Global III & IV, 850 F.Supp. at 1120.

Alleged Misrepresentations Regarding Fees and Commissions
The Complaint alleges that the Defendants misrepresented and failed to disclose excessive fees, front end loads, profits, and commissions to Sorcic and others, and that Sorcic and his associates, through presentations, advertisements, solicitations, recommendations, and representations, misrepresented that they would not be dependent upon or receive any commissions, fees or other inducements to recommend specific investments. The Complaint further alleges that Sorcic and his associates omitted informing the Plaintiffs that they did in fact receive fees, profits and commissions, and that Integrated and its affiliates, including Sorcic, engaged in "creative financing" in order to produce additional profits from the investment projects, which would be diverted to Sorcic and others in the form of excessive fees, profits, and commissions, rather than being used for the working capital of the investment entity.
The content of the Defendants' alleged misrepresentations is contradicted by documents received by the Plaintiffs in connection with the sale of these securities. The offering memoranda for each of these investment projects discuss the fees to be paid to Integrated and its affiliates and broker dealers, and inform potential investors that these fees had not been determined by arm's-length negotiation. (See, e.g., Quinn Aff.Ex. C at i-iii, 21-23 (342 Madison));[7] Quinn Aff.Ex. D at i-ii (Mid-Atlantic); Quinn Aff.Ex. E at ii, *569 44 (Satellite A); Quinn Aff.Ex. F at iii, vii-viii, 52 (Satellite B); (Cablevision Mem. at i-v, 66.)
The subscription agreements signed by the Plaintiffs also informed them that Integrated's affiliates would receive compensation and selling commissions in connection with the sales of these securities. (See, e.g., Quinn Aff.Ex. H, at 3 (342 Madison); Quinn Aff.Ex. K, at 3 (Mid-Atlantic); Quinn Aff.Ex. N at 3 (Satellite A); Quinn Aff.Ex. Q at 3 (Satellite B); Quinn Aff.Ex. W at 4 (Cablevision)).
The Form ADV's that Plaintiffs received from Sorcic informed the Plaintiffs that Sorcic and his related companies were registered representatives of Integrated, that they might recommend investment products sponsored by Integrated and its affiliates, and that they could receive commissions if the Plaintiffs purchased these investment products. (See, e.g., Sorcic Aff.Ex. 1, 2, & 3.) Jack, Edith, Karl, and Melinda Kinley received these forms no later than September, 1986. (Sorcic Aff.Exs. 4-6; 9-11.)

Risks Associated with These Investments
The Plaintiffs also assert that they relied on oral representations that these investments were safe and conservative. However, the Memoranda warned that the investments involved a high degree of risk. (See, e.g., Quinn Aff.Ex. C at ii-iii (342 Madison); Quinn Aff.Ex. D at ii (Mid-Atlantic); Quinn Aff.Ex. E at iii (Satellite A); Quinn Aff.Ex. F at v-vii (Satellite B); Cablevision Mem. at v). Multi-page sections entitled "Risk Factors" in each of the memoranda describe the risks involved in these investments in detail. (See, e.g., Quinn Aff.Ex. C at 27 (342 Madison); Quinn Aff.Ex. D at 13 (Mid-Atlantic); Quinn Aff Ex. E at 16 (Satellite A); Quinn Aff.Ex. F at 20 (Satellite B); Cablevision Mem. at 20).
Plaintiffs also specifically acknowledged in their subscription agreements that the Partnerships were risky investments. (See, e.g., Quinn Aff.Ex. H at 5-7 (342 Madison); Quinn Aff.Ex. K at 5-7 (Mid-Atlantic); Quinn Aff. Ex. N at 3-6 (Satellite A); Quinn Aff.Ex. Q at 4-7 (Satellite B); Quinn Aff.Ex. W at 5-6 (Cablevision)).

Projections Regarding These Investments
The Plaintiffs also allege that the Defendants misrepresented that the projections established for these investments "were conservative, proper and consistent with current market conditions." However, the offering materials emphasized the speculative nature of the projections contained therein, discussing, for example, that the accuracy of the projections were subject to a number of conditions that were entirely outside the offeror's control. (See, e.g., Quinn Aff.Ex. C at iii-iv (342 Madison); Quinn Aff.Ex. D at iii, 13-14 (Mid-Atlantic); Quinn Aff.Ex. E at iii, 16 (Satellite A); Quinn Aff.Ex. F at v-vi, 20 (Satellite B); Cablevision Mem. at v-vi).
In Dodds, the Second Circuit held that a "storm warning" arose from the fact that, although the unsophisticated plaintiff in that case had requested conservative investments, the offering materials described the investments in question as risky. This single storm warning was sufficient to raise a duty of investigation and start the running of the statute of limitations in the securities fraud action in that case. Dodds, 12 F.3d at 352.
The conflicts between the numerous oral assertions allegedly made to the Plaintiffs and the written materials received by the Plaintiffs would have alerted the ordinary investor and, a fortiori, the sophisticated investors involved in the present case, that there was something amiss that should be investigated. The affidavit of Edith Kinley, offered in support of tolling the statute of limitations demonstrates that any failure of the Plaintiffs to discover the alleged fraud was due to a lack of diligent investigation on their part.
The Plaintiffs were put on inquiry notice of the alleged fraud at least by the time that they received their Form ADV's, which was, at the latest, September 23, 1986. (Sorcic Aff.Ex. 11.) As the Complaint was not filed until November 1991, the Plaintiffs' RICO claims are time-barred.

Breach of Fiduciary Duty
Regardless of whether New York or Texas law applies to the Plaintiffs' claims for breach of fiduciary duty, these claims are time-barred. Under Texas law, the statute *570 of limitations for breach of fiduciary duty is two years from when the plaintiffs actually or constructively discovered the breach. Constructive discovery occurs when the breach could have been discovered in the exercise of reasonable diligence. Hanley v. First Investors Corp., 793 F.Supp. 719, 721 (E.D.Tex. 1992).
Under New York law, breach of fiduciary duty claims are subject to the longer of six years from the alleged breach or two years from the time plaintiffs knew or should have known of their claims. Zaref v. Berk & Michaels, P.C., 192 A.D.2d 346, 595 N.Y.S.2d 772, 774 (1st Dept.1993). However, under New York's "borrowing statute," N.Y.C.P.L.R. § 202, "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either state or the place without the state where the cause of action accrued." For purposes of the borrowing statute, the Plaintiffs' claims accrued in Texas, where they resided at the time of their purchases of these investments. See Global I & II, 815 F.Supp. at 649. The Plaintiffs' breach of fiduciary duty claims, therefore, are governed by Texas' statute of limitations.
Plaintiffs' claims for breach of fiduciary duty are premised on the same allegations as those underlying their RICO claims: that the Sorcic Defendants failed to disclose their relationship with Integrated and the Secret Inducements paid to them by Integrated to recommend investments.
Under Texas law, the existence of a fiduciary relationship does not eliminate the requirement of diligence in attempting to discover fraud. Andress v. Condos, 672 S.W.2d 627, 630 (Tex.App.1984); see also Hanley, 793 F.Supp. at 721 (standard for determining when statute of limitations begins to run for Texas breach of fiduciary duty claim is same as that for federal securities laws). Particularly in light of the financial sophistication of these Plaintiffs, the storm warnings discussed above with respect to the Plaintiffs' RICO claims were sufficient to put the Plaintiffs on notice of their breach of fiduciary duty claims by, at the latest, on September 23, 1986, and the Plaintiffs have not alleged sufficient facts to indicate that they could not, with reasonable diligence, have discovered the alleged fraud. The Plaintiffs' claims for breach of fiduciary duty are therefore time-barred.

Mellon's State Court Actions
Plaintiffs object to Mellon's Motion to Dismiss because Mellon has filed separate suits in New York State Court on the Notes involved in this lawsuit, and seek to bar Mellon from seeking collection on these Notes until such time as this consolidated litigation reaches the procedural posture for Mellon to assert compulsory counterclaims.
Mellon has not yet answered the Plaintiffs' Complaint in this action. Rule 13(a), Fed. R.Civ.P. provides:
(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction....
Rule 13 is inapplicable where the pleading to which the Rule refers has not yet been required. The Sixth Circuit in United States v. Snider, 779 F.2d 1151, 1157 (6th Cir.1985), held that:
Until [a] motion to dismiss is ruled upon it is not known whether the plaintiff has a claim. Without a valid claim there can be not counterclaim, compulsory or permissive. A motion to dismiss pursuant to Rule 12(b), Fed.R.Civ.P., is not a pleading as defined in Rule 7. There is no reason for a party to file a pleading while a motion to dismiss is pending.
See also Carteret Sav. & Loan Ass'n F.A. v. Jackson, 812 F.2d 36, 38 (1st Cir.1987).
Mellon's counterclaims, compulsory or permissive, need not be filed while Mellon's motion to dismiss Plaintiffs' Complaint is pending. The Court, therefore, need not address the propriety of Mellon's action in the New York Supreme Court.

*571 Plaintiffs' Request for a Stay is Denied, and Plaintiffs Are Granted Leave to Replead

The Plaintiffs request that, if the Court finds their pleadings deficient, they be granted a chance to cure the defects in their Complaint. With regard to motions to amend under Rule 15, Fed.R.Civ.P., this Court has noted that "leave to amend `shall be freely given when justice so requires'; this mandate is to be heeded.'" Morin v. Trupin, 835 F.Supp. 126, 129 (S.D.N.Y.1993) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). The Supreme Court has indicated that "[i]f the underlying facts or circumstances relied on by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. at 182, 83 S.Ct. at 230.
It is unclear whether the Plaintiffs could cure the deficiencies in their pleadings noted in this opinion, however, the Plaintiffs are granted leave to replead within twenty days of the filing of this opinion.
The Plaintiffs have also joined in a request made by a number of other plaintiffs in this multi-district litigation to stay this action pending further developments in the Integrated bankruptcy proceedings. In the case of the Kinleys, however, this request came after the present motions were fully submitted and oral argument had been heard thereon. The Kinleys' request for a stay is therefore denied.

Conclusion
For the reasons stated above, the Plaintiffs' motion for a suggestion of remand is denied, the Plaintiffs' request for a stay is denied, and the Plaintiffs are granted leave to replead within twenty days of the filing of this opinion. The Defendants' motions to dismiss the Complaint or for summary judgment are granted.
It is so ordered.
NOTES
[1] In October 1993, after filing a motion to dismiss jointly with Defendant Mid-Atlantic, Defendant 342 Madison Avenue Associates Limited Partnership ("342 Madison") filed for relief under Chapter 11 of the United States Bankruptcy Code, staying all legal proceedings against it.
[2] Cablevision has apparently settled and been dismissed from this case prior to the filing of the present motions. (Pl.'s Mem. at 4 n. 3.)
[3] On a motion to dismiss, all of the factual allegations in a complaint must be accepted as true. The following facts are, therefore, taken principally from the Plaintiffs' Complaint, and do not represent findings of the Court. See Ades v. Deloitte & Touche, 843 F.Supp. 888, 890 (S.D.N.Y.1994).
[4] The Complaint alleges that the Plaintiffs' last purchase occurred in December 1985. However, Defendants Integrated Resources Equity Corporation and Millennium Financial Services, Inc. assert that the Kinleys' final purchase occurred in August 1986. (Quinn Aff. ¶ 11.) This discrepancy is without import in the resolution of these motions.
[5] The Defendants argue that these claims are precluded by contractual provisions through which the Plaintiffs allegedly agreed that New York law would govern any disputes arising out of their investments. The Court need not reach this issue with regard to the claims under the Texas Securities Act, because these claims are barred by the relevant statute of limitations.
[6] Plaintiffs also request a declaratory judgment that "[t]he wrongful foreclosure extinguished all deficiencies under each of the investor notes." (Compl. ¶ 27.2.4.) The Complaint makes reference to the Defendants' "wrongful foreclosure" only "upon belief." Compl. ¶ 20.)

The Defendants have supplied an affidavit that no foreclosure of the Plaintiffs' collateral was ever effected, wrongful or otherwise. (Jacobs Rep.Aff. ¶ 6.) In light of the fact that there was no foreclosure, Plaintiffs' claim for wrongful foreclosure is dismissed.
[7] As noted earlier, 342 Madison has filed for protection in bankruptcy, and Cablevision has settled. These facts are not preclusive of liability predicated on fraudulent sales of interests in these two investment projects, so this opinion will make reference to the materials used in offering these projects to the Plaintiffs.